THE FIRST NATIONAL BANK OF SIGOURNEY, *et al.*, v. ELIZA K. WOODMAN, Executrix, Appellant.

**Statute of Limitations:** NEW PROMISE: EVIDENCE. Where letters
1   leave doubt as to what debt is meant, parol evidence is admis-
2   sible to show the subject-matter referred to. *Parsons v. Carey*,
    28 Iowa, 43, and *Collins v. Bane*, 34 Iowa, 395, *distinguished*.

3   SAME. It is not essential that they state the amount due.

MORTGAGE NOTE. A revivor of the note keeps the lien of its mort-
4   gage alive.

**Subsequent Mortgages.** After the statute had apparently barred a
    note and mortgage to secure it which remained uncanceled of
4   record, but at a time when the mortgage debt was actually
    revived by new promise, mortgages on the same land were taken

mostly for antecedent debts, nothing being parted with on the strength of the seeming bar of the statute. *Held*, the revived mortgage is prior, in the absence of more controlling equities.

*Appeal from Keokuk District Court.*—Hon. David Ryan, Judge.

Friday, February 1, 1895.

The defendant Eliza K. Woodman is the executrix of the estate of Mrs. M. M. Howe, deceased. On the first day of December, 1876, one John Q. Howard made to A. J. Kane his two promissory notes, aggregating one thousand two hundred and thirty-nine dollars and two cents, and secured the same by mortgage on real estate in Keokuk county. Both of these notes matured, by their terms, January 4, 1878. On the twenty-fourth day of March 1877, these notes were sold to Mrs. M. M. Howe, the negotiations on her part being conducted by her agent, J. B. Treat. Before the assignment of the notes to Mrs. Howe, there had been paid on the principal of the notes forty-nine dollars and two cents. Since the assignment to the plaintiff, only the interest up to July 1, 1888, has been paid. Mrs. Howe was, prior to and at her death, a resident of Wisconsin, as was also her agent, Treat. On the first day of February, 1888, Howard made to one J. Oelmayer his two notes, for three hundred and twelve dollars and fifty cents each, and secured them by a mortgage on the same real estate. The other plaintiff is the Keokuk County Bank, and Oelmayer sold to each of the plaintiff banks one of the notes. Redhead, Norton, Lathrop & Co. appeared as defendants in the suit, and on the seventh of March, 1888, Howard made to the firm his note for two thousand four hundred and ninety-eight dollars and twenty cents, and secured the same by mortgage on the real estate. In August, 1889, the

banks foreclosed their mortgage, and made Redhead, Norton, Lathrop & Co. and Mrs. Howe defendants. Redhead, Norton, Lathrop & Co. answered, and Mrs. Howe, being a nonresident and served by publication, made default. The decree in that proceeding fixed the lien of the plaintiff banks as first, and that of Redhead, Norton, Lathrop & Co. as second, leaving that of Mrs. Howe as junior to both. In March, 1891, Mrs. E. K. Woodman, as executrix of the will of Mrs. Howe, who had since died, presented an answer and cross petition; and, under the provisions of the law as to judgments entered upon default and service by publication, the court granted her a trial. In her answer she pleaded a revivor of the debt,—that would otherwise be barred,—by written admissions, and in her cross petition she asked a foreclosure of her mortgage as a first lien. Issue was taken on her pleadings by plaintiffs and Redhead, Norton, Lathrop & Co., so that the question of the priority of liens is presented. The District Court gave to Mrs. E. K. Woodman a judgment and foreclosure, with a right of redemption, but denied to her a prior lien, and she appeals. Some additional facts may be stated in the consideration of the questions presented.—*Reversed.*

*Hubbard & Dawley* for appellant.

*Woodin & Son* and *J. P. Talley* for appellees First Nat. Bank of Sigourney and Keokuk County Bank.

*N. B. Raymond* and *C. H. Mackey* for appellees Redhead, Norton, Lathrop & Co.

Granger, J.—I. It will be seen from the statement of facts that the Kane debt, which is that of appellant, is barred by the statute of limitations,

because more than ten years elapsed after the maturity
of the last note before action, and also before the mort-
gages of the banks and Redhead, Norton, Lathrop &
Co. were taken.  If the statute of limitations is avail-
able for these mortgages, the judgment is correct,
unless the cause of action on the note and mortgage of
Mrs. Howe had been revived.  The revivor is claimed
because of certain letters from the debtor, Howard, to
Treat, who was at all times the agent for Mrs. Howe.
The letters are as follows:

"Sigourney, Iowa, July, '86.  J. B. Treat, Esq.:
Inclosed find draft for $50, for which please acknowl-
edge receipt.  The balance will be sent soon.
Yours, respectfully, J. Q. Howard."

"Sigourney, Iowa.  Dec. 3, 1886.  J. B. Treat:
Inclosed find draft for $45.20, balance of interest on
notes to July 1, 1886.  Please excuse delay, as I have
been waiting on sale of produce from farm, but will
wait no longer, and therefore send you the amount
to-day.  Yours, respectfully, J. Q. Howard."

"Sigourney, Iowa.  Dec. 6, 1887.  J. B. Treat,
Esq.:  Inclosed find draft for $45.20, to pay balance of
interest.  Thanks for waiting.  Yours, respectfully,
J. Q. Howard."

"Sigourney, Iowa.  June 6, 1888.  J. B. Treat,
Esq.:  Inclosed find draft for $50.00, to pay interest
on note.  Will pay balance as soon as I can.  Yours,
respectfully, J. Q. Howard."

"Sigourney, Iowa.  June 14, 1888.  J. B. Treat,
Esq.:  Inclosed find $45.20 draft, to pay balance of
interest on notes to July 1, 1888.  Yours, respectfully,
J. Q. Howard."

"Sigourney, Iowa.  Nov. 18, 1889.  J. B. Treat,
Esq.:  I hope to be able soon to pay the interest.  I
am very sorry that it has not been paid.  Now, I expect
money from different parties.  It may not come for six

weeks, and it may come any day.   I will have to ask
your favor to wait a little longer.   Will certainly send
it as soon as I can, some or all of it; and I hope also, if
possible, to pay the principal, if successful in my pro-
jects.   Yours, respectfully, J. Q. Howard."

A difficulty with these letters seems to be in know-
ing to what debt they refer.   That they refer to a debt
evidenced by a note is not to be doubted.   That fact
appears from the language of the letters, but the letters
do not identify the particular note or notes in a way to
say, from the letters themselves, that they amount to
an admission or promise as to a particular debt.
Appellant offered to show by Mr. Treat, who received
the letters and applied the payments, to what debt they
referred.   His testimony shows that he resides in Mon-
roe, Wis., where Mrs. Howe resided in her lifetime;
that he was administrator of her husband's estate, and
negotiated, on behalf of Mrs. Howe, the purchase of the
Kane notes and mortgage; that she paid the full face
value for them; that except for one month, until deliv-
ery for this suit, they were in his possession, as the agent
for Mrs. Howe; that they were the only notes held by
him, made by Howard; and that he received the letters
offered in evidence, and applied the remittances con-
tained in them on the notes in suit.   By this testimony,
the identity of the notes, referred to in the letters, is
conclusively established.   But it is said the testimony
is not competent for such a purpose.   That such testi-
mony is competent has support in *Wise v. Adair*, 50
Iowa, 104; *Stout v. Marshall*, 75 Iowa, 498, 39 N. W.
Rep. 808, and *Miller v. Beardsley*, 81 Iowa, 720, 45 N. W.
Rep. 756.   It is conceded that these cases so hold, but
it is urged that the holdings are erroneous, and in con-
flict with *Parsons v. Carey*, 28 Iowa, 431, and *Collins v.
Bane*, 34 Iowa, 385.   We see nothing in either of those
cases not in entire harmony with the rulings in the

other cases.   The question considered in the *Parsons Case* is as to the effect of a particular payment in arresting the operation of the statute of limitations.   That is not the question we are considering, nor do the cases said to embody the erroneous rule treat the question as to the effect of a payment on the statute of limitations. While the letters relied on as containing the requisite admissions and promises to revive the cause of action are, mostly, those of remittances, it is not the fact of payment that is relied on, but the statements in the letters signed by the party.   In the *Collins Case* we think the rule of the three cases said to be erroneous has express recognition or sanction.   In that case, in commenting on the admissibility of parol evidence to explain a letter relied on as reviving the cause of action, it is said, upon the authority of 1 Greenl. Ev. sections 277, 282, 290, that it is a well-settled rule that parol evidence "is admissible to show the subject-matter referred to, the person intended, and the surrounding circumstances of the author of the instrument."   The rule thus stated is liberal.   It permits parol evidence to show the person, the subject-matter, and the surroundings.   Nothing more was done by Treat in this case.   At least, his testimony is not important to a greater extent.   What was doubtful in the letters was the subject-matter,—the debt.   The *Collins Case* refers to *Penley v. Waterhouse,* 3 Iowa, 418, where a similar rule is recognized.   It is, however, said as to the *Penley Case* that the holding was under a different statute. The statutes, then and now, differ only in this: that the present statute requires that the admission or promise to arrest its operation shall be in writing, signed by the party.   If, as the statute then was, extraneous evidence could be used to enable the jury to apply the particular verbal statements relied on to revive the action, we do not see why they may not as well be used under the

present law for the same purpose. That seems to have been the thought in the *Collins Case* which, being under the present statute, refers to the *Penley Case*, as sustaining the conclusion announced. Appellee quotes from the *Collins Case* the fifth division of the opinion, as follows: "The plaintiff introduced the defendant as a witness, and he testified that the debt referred to in the letters written by him was the note in controversy, etc. This testimony the court also rejected as incompetent. There was no error in so doing. The statute requires the admission to be in writing; parol evidence is not competent to prove it." This is relied upon as holding a different rule from that of *Wise v. Adair*, and other cases. Such a construction of the language quoted would place it in conflict with other parts of the opinion. But, it may be said, what does it mean? We think it means this: that, as testimony from the defendant, or party to be bound by the promise or admission, it would amount to a verbal admission or promise by him. The concluding words of the quoted division show our conclusion to be correct. It is there said: "The statute requires the admission to be in writing; parol evidence is not competent to prove it." That is the only argumentative language in support of the ruling, and leaves no doubt as to the reasoning of the court. Such testimony from other witnesses could not be considered as admissions or promises. The authorities outside of this state are in conflict, but we think the weight of them, and the reasoning, support the holding in this state. We think the testimony is proper for consideration.

II. We are next to determine whether or not the letters, aided by verbal proofs, are sufficient to revive the cause of action as between the maker of the notes (Howard) and appellant. With the verbal testimony to show to what "notes" and "debts" the letters refer,

we think there is no room for doubt on the question of admissions that the notes were not paid as late as November 18, 1889. That these different letters, upon the same subject, may be considered, see *Collins v. Bane, supra.* · The last letter is a plain acknowledgment that both interest and principal are unpaid. In *Nelson v. Hanson,* 92 Iowa, 356, 60 N. W. Rep. 655, this court considered the different holdings upon facts sufficient to revive a cause of action, and they need not be again noticed. It is said that, conceding the letters were written with reference to the notes in suit, there is no admission of the amount due thereon. There had been, before the sale of the notes to Mrs. Howe, an indorsement of forty-nine dollars on the principal of the notes. No other payments appear except those of the interest to July 1, 1888. It is urged that the payment of forty-nine dollars is not proof that other payments have not been made on the principal. That is true, but the admissions are clear that some of the principal is due; and, if so, the cause of action survives for whatever is due, and that is to be settled by averments and proof. These are notes that on their face, when a cause of action exists, prima facie fix the amount due thereon; and, if less is claimed to be due, the question is to be adjusted upon issues formed for that purpose. It is not as it is in case of an account where there is no instrument fixing the amount of the debt. The admission or promise, when made, is as to the note; that is, it is an admission that the note is unpaid, or is a promise to pay it. That is an admission or promise as to whatever is actually due. The obligation is the same as if the action had not been barred. It is simply a revivor of the cause of action on the notes.

III.   Another question in the case is as to the effect of the revivor upon the subsequent mortgagees.

An admission or promise that will suspend the operation of the statute will keep alive the lien of the mortgage given to secure the indebtedness. *Clinton Co. v. Cox,* 37 Iowa, 570; *Mahon v. Cooley,* 36 Iowa, 479. On the face of the notes of appellant, the last one would mature, allowing for the days of grace, February 4, 1877, when the cause of action would accrue. The parties extended the time for payment to January 1, 1878, when the statute of limitation commenced to run. The notes of the plaintiff were made February 1, 1888, and those of Redhead, Norton, Lathrop & Co. March 7, 1888, with mortgages to secure the same. The revivor of the cause of action took place as early as December 3, 1886, if not earlier. In *Miller v. Beardsley, supra,* it is said: "In the absence of proof to the contrary, the payment of interest warrants the conclusion that there is an indebtedness for the principal." In this case there is no proof to the contrary. The letter of December 3, 1886, contains a remittance of forty-five dollars and twenty cents, balance of interest to July 1, 1886. With the testimony showing the reference of the letter to the notes in suit, the revivor is established. The other letters add to the conclusiveness of the fact. At the time that the mortgages of plaintiffs and Redhead, Norton, Lathrop & Co. were taken, there actually existed a cause of action, but, by the records, the cause seemed to be barred; that is, the period of limitation had run. Did that condition of the record impose on parties taking new mortgages any duty as to inquiry, or were they justified in assuming that the operation of the statute had not been arrested? In determining the question, all laws bearing on the subject should be considered. The law on the subject of limitation of actions as clearly provides for the arrest of the operation of the statute as it does for it to run. Now, when these appellees saw the

condition of the record, what did it suggest to them in view of the law?   It seems to us it suggested this:  The cause of action to foreclose the Kane mortgage is barred, unless the operation of the statute by which it would be barred has, in some of the ways provided by law, been arrested, or the action has been in such a way revived.   It is not a provision of the law that the fact of the revivor of a cause of action, to render it valid shall be made a matter of record.   The revivor takes effect by virtue of the admission or promise in writing.   It is a provision of our law that "the time during which a defendant is a nonresident of the state shall not be included in computing any of the periods of limitation."   The fact of such an absence, which would arrest the running of the statute, would not, of course, be indicated by the record.   In *Brown v. Rockhold*, 49 Iowa, 282, the question of the statute of limitation is considered, and the case deals with the fact of nonresidence from the state by the defendant, the statutory period having fully run; and, treating alone of the effect of such absence, it is said:  "To enable a party to insist by demurrer upon the statutory bar, the pleading must show on the face thereof that the cause of action is within the statute."   The legal effect of the holding in that case is that the party pleading facts to take the case out of the operation of the statute need not plead all the facts to show that the action is not barred, but that, until the facts do appear, the law favors a right of action.   In *Kerndt v. Porterfield*, 56 Iowa, 412, 9 N. W. Rep. 322, which is a similar case, except that the second mortgage in that case was given before the period of limitation had run, this language is used:  "When his interest was acquired, he took it subject to the mortgage, with the knowledge that the debt could be revived by a new promise, and the mortgage lien would stand as long as the debt existed."

The case leaves undetermined the rule with the facts in this case, but the language quoted is significant in giving prominence to the fact that a party taking a second mortgage knows and must consider that an action barred may be revived, and that the revivor may be either before or after the statutory period. In *Hellman v. Kiene*, 73 Iowa, 448, 35 N. W. Rep. 516, it is held that where an action is barred, and the debtor makes an assignment for the benefit of creditors, the debtor can, after claims are filed with the assignee, revive the cause of action, and the revivor will be binding on the assignee and creditors. It is true that case differs somewhat from this as to facts, but still it is quite in line with the thought of other cases to the effect that rights do not vest merely because of the condition of the record so as to defeat the right of a debtor to revive a barred cause of action. But, on the contrary, it tends to the theory of permitting actions to be revived without prejudice because of the record. The law makes provisions for the satisfaction of record of mortgages when the debts they secure are paid, and the practice is so common that, where one is not canceled, it naturally gives rise to the thought that it is not paid, even though the period of limitation has run. In *Murphy v. Coates*, 33 N. J. Eq. 424, where the period had run so as to raise a presumption of payment, and a second mortgage was given, it was held that the record of the first mortgage, because uncanceled, gave the second mortgagee such notice of the first mortgage as to put him on inquiry; and the first mortgage, because of a promise to pay by the debtor, that rebutted the presumption of payment because of the lapse of time, was given the priority. In view of the statute on the subject, and the authorities cited, we regard it as fairly well settled that in the absence of controlling equities, a second mortgagee, where a prior

mortgage is uncanceled, must take notice of the fact whether or not the cause of action thereon has been revived. In this case the equities are not controlling in behalf of appellees. Except a small sum the mortgages were given for pre-existing debts owing before the action was barred on appellees' mortgage. And, further, it does not appear that anything was parted with relying on the condition of the record. See *Murphy v. Coates, supra.* A decree should be entered giving to appellant's mortgage priority.—*Reversed.*