LYMAN COOK, *et al.*, Administrators of the Estate of D. W. GRIMES, Deceased, Appellants, v. A. H. PRINDLE, *et al.*, Defendants, GUST SACKRISON, *et al.*

**Statute of Limitations:** RENEWAL: *Rights of Purchasers.* Defendant gave his note, and secured it by mortgage on land. He sold the land before the statute ran against the debt. *After* he sold, and after the debt became barred, he revived it by a new promise. His grantee sold to another at a time when the mortgage debt appeared barred. Neither grantee knew of the new promise. *Held*, the new promise did not revive the mortgage lien. *Bank v. Woodman*, 93 Iowa, 668, *distinguished*, and the former opinion in this case (63 N. W. Rep. 187), is, on this point overruled on rehearing.

**Construing of Statute:** AFTER ACQUIRED INTERESTS. Code, section 1931, providing that where a deed purports to convey property not possessed by the grantor, interest therein subsequently acquired by the grantor, inures to the benefit of the grantee, does not apply where a mortgagor who owns an undivided four-sevenths of a tract of land, by mutual mistake, deeds the whole estate, and afterwards acquires the other three-sevenths.

**Secret Trust.** Evidence does not establish.

*Appeal from Des Moines District Court.*—HON. J. M. CASEY, Judge.

THURSDAY, APRIL 9, 1896.

ACTION in equity for judgment on a note and the foreclosure of a mortgage securing it. A decree was entered granting a portion of the relief asked by plaintiffs, and denying them other relief, from which they appeal.—*Affirmed.*

*P. Henry Smythe* for appellants.

*A. M. Antrobus, C. L. Poor,* and *Surley & Clark* for appellees.

*A. H. Stutsman* and *W. W. Dodge* for interveners.

KINNE, J.—I.   A rehearing was granted in this cause, and it has been again submitted to us for determination.   The original opinion may be found in 63 N. W. Rep. 187.

April 1, 1870, Abial Prindle, Cordelia Prindle, Sarah A. Prindle, and Catherine Prindle, executed to David W. Grimes, their promissory note for one thousand, one hundred and thirty dollars and forty cents, due two years after date, and drawing ten per cent. interest, payable annually.   August 1, 1870, the same defendants executed a mortgage, to secure the payment of said note, upon certain real estate.   Said mortgage was duly recorded.   This suit is brought for a judgment on said note, and for the foreclosure of said mortgage.   February 15, 1882, the makers of said note and mortgage, indorsed upon the back of said note, the following:   "We do hereby admit that this note, with interest, is unpaid, and renew the promise therein contained, to pay the same, and the mortgage given to secure the same, is to stand and continue in force for the security thereof."   This was signed by all of the makers of the note.   January 25, 1876, said Prindles conveyed to the defendant, Lukenbill, forty acres of the land, which was embraced in their mortgage to Grimes.   Lukenbill took immediate possession of said land, and continued to occupy it until September 17, 1888, when he conveyed the same to intervener Sackrison, who has ever since been in possession of it.   April 16, 1886, said Prindles executed their note to E. Rabb, for three thousand dollars, and secured the same by a mortgage, embracing all the land included within plaintiff's mortgage, and other lands, except that the Lukenbill forty acres was not embraced therein.   Afterward, the Rabb note and mortgage were assigned to the defendant, J. J. Seerley, and by him to his wife, L. L. Seerley.   April 28,

1887, said Prindles executed their note to L. L. Seerley, for one thousand dollars, and secured the same, by a mortgage upon the lands in controversy, except the Lukenbill forty, and other lands. March 20, 1888, said Prindles executed their note to L. L. Seerley, for one thousand seven hundred and fifty dollars, and secured the same, by mortgage upon the same lands. November 5, 1891, defendant Worthington obtained three judgments in the district court of Des Moines county, against the defendant, A. H. Prindle. At the tax sale, on December 2, 1889, C. C. Clark purchased the real estate in question, except the forty acres, for the taxes of 1888, and thereafter assigned the certificates to the defendant J. J. Seerley, who received the tax deeds for the land after the commencement of this action, to-wit, December 17, 1892. Defendants Prindle answered, averring that, at the time they executed the mortgage to Grimes, they only owned four undivided sevenths of the land described in the mortgage, and that, by mistake, said mortgage was so drawn as to cover the full title to said land. They asked that the mortgage be reformed. They also pleaded that, at the time the indorsement was made on the Grimes note, it was verbally agreed that the rate of interest should be six per cent. The other defendants joined in these allegations. Luckenbill answered, setting out the conveyance of the forty acres by the Prindles to himself, and his conveyance of the same to Sackrison, and asking to be dismissed, with his costs. Sackrison intervened, and pleaded that he purchased the forty acres of Lukenbill and wife in good faith, and without knowledge that there was a valid mortgage on the same; that plaintiffs' mortgage was barred; that the attempted renewal of said Grimes' note and mortgage was after the sale to his grantor, Luckenbill, and after the grantors had parted with all their interest in said land,

and was without effect as against him; that inter-
veners had no notice, or knowledge, of said renewal
when he made his purchase; and that Grimes knew
of Lukenbill's purchase. He asks that said Grimes'
mortgage be canceled as to his land, and that his
title be quieted. Defendant Worthington answered,
setting up her judgments, and joining in the
allegation that the Grimes mortgage was only intended
to convey four-sevenths of the land, and averred that
A. H. Prindle had acquired title to the other three-
sevenths of said land since the execution of the Grimes
mortgage, and prior to the recovery of her judgments,
and she claims a lien prior to said mortgage on said
three-sevenths interest in said land. Plaintiffs con-
tend that the three-sevenths interest acquired by A.
H. Prindle, inured to their benefit, under the Grimes
mortgage. Defendant L. L. Seerley, joins in the
claim for the correction of plaintiffs' mortgage, and
contends that said mortgage is junior to her mort-
gages, except as to the four-sevenths of the land owned
by the Prindles. She asks a judgment and decree of
foreclosure on her three notes and mortgages, and that
her rights be decreed superior to those of defendant
Worthington, and against plaintiffs, as to said three-
sevenths of said land. Plaintiffs aver that J. J. Seer-
ley and C. C. Clark, his partner, were attorneys in this
case for the defendants Prindle, L. L. Seerley, and
Worthington; that J. J. Seerley procured said tax
title in secret trust, for the use and benefit of his said
clients, and fraudulently seeks to use the same to
defeat plaintiffs' prior lien on said lands. They offer
to redeem from said tax sale, and ask to be permitted
to do so, and that the deeds be set aside. The district
court entered a decree for plaintiffs for the amount due
on the Grimes note; for L. L. Seerley for the several
amounts due on her notes and mortgages; and adjudged
that J. J. Seerley had valid tax deeds to some of the

real estate covered by the Grimes and L. L. Seerley mortgages, and that said mortgages were not liens upon said lands. As to other lands covered by the Grimes mortgage (not including the three-sevenths acquired by Prindle after it was executed), a decree of foreclosure was entered. The L. L. Seerley mortgages were also foreclosed as to certain lands. It was held that the renewal by the Prindles of the note to Grimes was void as to Lukenbill and Sackrison, and a foreclosure of the Grimes mortgage as to that forty acres was refused. Plaintiffs were adjudged to pay the costs.

II. Upon the foreging facts, the following questions are to be determined: *First.* As to the alleged agreement for a reduction of interest on the Grimes note and mortgage. *Second.* Whether the showing is such as to justify the decree below, finding that the Grimes mortgage erroneously embraced the entire title to the land described therein, when it should have conveyed only four-sevenths of it. *Third.* Whether plaintiffs' contention touching Seerley's tax titles is supported by the evidence. *Fourth.* Whether Lukenbill and Sackrison can successfully plead the statutes of limitation as against the lien of the Grimes mortgage on the forty acres conveyed by the Prindles to Lukenbill, and by him to Sackrison.

There is no evidence establishing the alleged agreement for a reduction of the interest on the mortgage debt of the Prindles to Grimes; therefore, judgment was properly rendered in plaintiff's favor, for the amount due on the Prindle note to Grimes.

The evidence established the fact that it was the intention of the parties, in executing the mortgage to Grimes, to have it cover only four-sevenths of the land therein described, it being, also, the interest then, in fact, owned by the mortgagors. It is certain that, by some oversight or mistake, the

mortgage was so written as to embrace a full title to the land described, rather than the four-sevenths, as intended. Plaintiffs insist, however, that the defendants are now barred from having a reformation of the mortgage in this respect. If this be true, it is no reason for giving plaintiffs a greater interest under the mortgage than the mortgagors possessed, and especially so, when it appears that there was no intent to convey an interest greater than that then owned by the mortgagors. A. H. Prindle, one of the mortgagors, sometime after the execution of the mortgage to Grimes, acquired title to the other three-sevenths interest in this land, and plaintiffs insist that, this after-acquired interest inures to their benefits. Code, section 1931, provides: "Where a deed purports to convey a greater interest than the grantor was at the time possessed of, any after-acquired interest of such grantor, to the extent of that which the deed purports to convey, inures to the benefit of the grantee." This statute applies to mortgages where there are no intervening equities. - *Rice v. Kelso,* 57 Iowa, 115 (7 N. W. Rep. 3, and 10 N. W. Rep. 335). Here we have a case where the mortgage, by mistake, conveyed a greater interest than the mortgagors possessed. The consideration was not based upon an interest in the property to be thereafter acquired. The entire arrangement between the parties was, as we have found, grounded upon the belief and intention to mortgage the undivided four-sevenths of the land. No other or greater interest was considered, but by oversight, the entire interest was pledged for the debt. Now, manifestly the statute was never intended to apply to a case where the grantee or mortgagee never had in contemplation or expectation the acquiring of any other or greater interest in the property than that then owned by the grantor or mortgagor, and when, by oversight or mistake, such greater interest was

embraced within the terms of the instrument. The court below properly held that plaintiffs were not entitled to a lien as against the after-acquired three-sevenths interest in the land.

III. As to the tax title of Seerley: The gist of plaintiffs' complaint touching defendant Seerley's tax title, is thus set forth in paragraph 6, of the amendment to their petition: "Plaintiffs charge the truth to be that said John J. Seerley procured said tax titles in carrying out an understanding had and agreed upon between himself and his said clients, that he should procure said titles in his name, or under his control, but in secret trust for the use and benefit of his said clients, and wrongfully and fraudulently used said titles to defeat the plaintiffs' prior lien on said lands; and that said tax titles are held by said Seerley, not for himself, but in trust for the use and benefit of his said clients." Counsel for appellants has, with great force and ability, argued the question as to the validity of these tax titles. We have examined the matter with care, and reach the conclusion that there was nothing in Seerley's relation to the parties which should have precluded him, under the circumstances disclosed, from acquiring the tax titles. We cannot consider the evidence in detail, but may properly say that, when these titles were acquired, neither he nor his partner, Clark, was an attorney for the Prindles. The purchase at the tax sale was not made for the Prindles, or for any other client, and Seerley acquired the certificates for himself only. He held them until the period of redemption had expired. After this suit was commenced, and no redemption having been made, he took his deed. The evidence falls far short of establishing any agreement, understanding, fraud, or trust, as is alleged by plaintiffs. Grimes died after this suit was commenced. He had ample opportunity to know the condition of this

land and title. He made no attempt to ascertain the facts touching the tax sale, and, without inquiry or investigation, began this suit. The slightest diligence on his part would have disclosed the situation, and he could have redeemed from the sale, and thus protected his mortgage lien. We discover no reason for setting aside this tax title.

IV. As to the defense of the statute of limitations: When Lukenbill acquired title to the forty acres, the mortgage to Grimes was of record, and, upon its face, in full force, and not barred. When he conveyed to Sackrison, said mortgage was barred, and had ceased to be a lien upon this land, unless it was continued as a lien by reason of the renewal of the debt which it secured. Sackrison took title to the land in ignorance of the indorsement which had before that time been made by the Prindles on the note to Grimes. If the indorsement upon the note was binding as to Sackrison, and effectual for the purpose of extending the lien upon the land, which he had purchased at a time when the mortgage on its face was barred, then he cannot successfully plead the bar of the statute.

We have, then, the question as to whether or not a mortgagor, after he has parted with the title to land, which is pledged for the security of a debt, may, by complying with the provisions of our statute, revive the debt, which is barred, so as to continue the lien of the mortgage in force, as against one who purchased the land when the mortgage appeared to be barred, and without notice of the attempted revivor. In the former opinion, it was thought that this question was ruled by the case of *Bank v. Woodman*, 93 Iowa, 668 (62 N. W. Rep. 28). That, we think, was not a proper view of that case. *Clinton County v. Cox*, 37 Iowa, 570, was a case where plaintiff sought to foreclose a mortgage, executed by

Cox. Everhart purchased the land from Cox. Butterfield filed a cross petition, alleging that Cox, on
November 6, 1857, executed to him a deed of trust, to
secure certain notes, and that since June 1, 1865, said
Cox had been a non-resident of the state. This cross
petition prayed for the foreclosure of the deed of
trust, against the land. Everhart, the purchaser of
the land, demurred to the cross petition, on the
ground that the cause of action was barred by the
statute of limitations. The demurrer being sustained,
Butterfield appealed. It was held, that the non-residence of the debtor, Cox, arrested the operation of the
statute, and that the remedy upon the indebtedness
still existed, and the lien might be enforced to satisfy
the debt. *Mahon v. Cooley*, 36 Iowa, 479, involved the
question of the power of a husband, by reviving the
cause of action, without the concurrence of the wife,
to keep alive the lien of a mortgage on the homestead, and which secured the debt, after the period of
limitation had expired. It was held, that he could
do so. *Brown v. Rockhold*, 49 Iowa, 284, involved
the same question as did the *Clinton County Case*,
and the holding was the same. In *Kerndt v.
Porterfield*, 56 Iowa, 412 (9 N. W. Rep. 322), the
facts were that the note and mortgage were executed October 20, 1865, and due in three years. Before
they were barred, Porterfield executed other notes,
secured, by a mortgage, on the same property, to one
Howard. After the original debt was barred, and
after Howard took his notes and mortgage, Porterfield
revived the debt. It was held that the new promise
revived the mortgage as against Howard, the junior
mortgagee. In *Palmer v. Butler*, 36 Iowa, 581, the
question was as to the effect of a revivor by a mortgagor
which was made prior to the purchase of the land by
another, and it was held that such revivor continued
the lien as against the purchaser. In *Day v. Baldwin*,

34 Iowa, 384, it was held that one who purchases the interest of the owner of the land may set up the bar of the statute. In *Palmer v. Butler, supra,* it is said: "It has been held by this court· that a new promise to pay a debt barred by the statute, made by the mortgagor *after* he had conveyed the mortgaged premises, will not revive the right of action for foreclosure against the grantee of the mortgagor, but that such grantee may protect himself against the foreclosure by pleading the statute, notwithstanding the new promise of the mortgagor. *Day v. Baldwin,* 34 Iowa, 380." In *Kerndt v. Porterfield, supra,* it is said: "It may be, but the point we do not decide, that one acquiring an interest in the mortgaged property after foreclosure of the mortgage is barred by the statute, and, before a new promise is made, would hold by a right superior to the mortgagee, after his debt is revived by a new promise. But the case is different where one acquires such an interest before the action upon the mortgage is barred, and, after the period of limitation has run, the debt is revived by a new promise." In *Bank v. Woodman, supra,* it was held that, "In the absence of controlling equities, a second mortgagee, when a prior mortgage is uncanceled, must take notice of the fact, whether or not the cause of action thereon has been revived." The question involved in that case, the right of a subsequent mortgagee to avail himself of the statute, as against a claim apparently barred, is not the question we have to deal with. We have a case where one purchased the mortgaged premises at a time when the debt, as appeared from the mortgage, was barred, and without any notice that, after his grantor purchased the premises, the mortgagors had, by written promise, undertaken to revive the debt. We do not think that there is any decision of this court which has determined this question against the

conclusion reached by the lower court. The doctrine of *Day's Case*, which we have shown has been recognized in at least two subsequent cases, is in harmony with the thought that one who purchases the mortgaged real estate at a time when the mortgage appears to be barred, may successfully interpose a plea of the statute of limitations, to the foreclosure of such a mortgage, which the mortgagors have attempted to revive after they have parted with their title, he having no notice of said revivor. We are not disposed to extend the doctrine of *Bank v. Woodman* to a case where the facts are like those at bar. We are aware that this court has often said that the lien of the mortgage will continue so long as the debt exists; and, as a rule, that is so, but the language thus used is to be construed in view of the facts then under consideration.

There is no doubt of the right of the mortgagors in this case to revive the debt as against themselves, or so as to continue the lien as against property which was embraced within the mortgage, and which they then owned; but as to the land in question, which they had sold long before the attempted revivor, and the title to which was acquired by Sackrison, in reliance on the fact that the debt, as evidenced by the mortgage, was barred, and, without notice of the revivor, there can be no such revivor. The law is well settled that, after the mortgagor disposes of the mortgaged premises by deed, he loses all control over them. He is then powerless to create or revive charges against such lands. As is often said, as to such premises, he is a stranger, and his power to revive a mortgage does not exist if, under the circumstances, he has not power to give a new one which would be binding thereon. *Zoll v. Carnahan*, 83 Mo. 43; *Lord v. Morris*, 18 Cal. 482; *Schmucker v. Sibert*, 18 Kan. 104; *Newbould v. Smith*,

33 Ch. Div. 127; *Wood v. Goodfellow*, 43 Cal. 185; 13 Am. & Eng. Enc. Law, p. 761. The decree of the district court is in all respects correct, and it is AFFIRMED.