## Nancy J. Jenks, Appellant, v. D. L. Shaw, Anna E. Hartley and W. H. Woodruff.

**Limitation of Action: MORTGAGE.** A mortgage may be foreclosed as against a vendee of the mortgagor, even though she is not made a party to the foreclosure proceedings till after the statutory period of limitation has run against the debt secured by it, where the proceedings for its foreclosure were commenced against the mortgagor before the expiration of such period. . The mortgage is but an incident of the debt, and may be foreclosed so long as the debt is not barred.

**Innocent Purchaser from Mortgagee: UNRECORDED ASSIGNMENT.** An innocent purchaser for a valuable consideration and without notice, who takes a warranty deed of property in which the mortgagee under an existing mortgage thereon joins as a grantor, takes the property free from the lien of the mortgage, even though the debt secured by it had previously been assigned to a third party, who had failed to make the fact of its transfer appear of record.

*Appeal from Allamakee District Court.*—Hon. W. A. Hoyt, Judge.

Tuesday, October 27, 1896.

Action in equity, commenced September 2, 1891, to recover judgment against the defendant Shaw, upon a promissory note for five hundred dollars, executed by him, payable to Laura M. Shaw, or order, "September 2, 1881, after date," with ten per cent. interest per annum from date, payable annually. Also for decree foreclosing a mortgage on certain real estate, given to secure the payment of said note. The note set out is indorsed: "Without recourse. Mrs. Laura M. Shaw," and plaintiff alleges that for a valuable consideration she purchased said note and mortgage, and is now the owner and holder thereof. A. H. Woodruff was made a. defendant, as having some interest in

the land, but he failed to appear or answer. Plaintiff, by an amendment to her petition, filed January 1, 1892, made Anna E. Hartley a party defendant, as claiming some interest in the land, which plaintiff alleged to be junior to her mortgage.. An original notice was served on Mrs. Hartley, December 31, 1891. On May 6, 1892, the defendants Shaw and Hartley filed separate answers. The defendant Shaw admitted the execution of the note and mortgage in suit, and denied that plaintiff had any interest therein, and alleged as defense, in substance, as follows: That about July 10, 1879, he was owing Mr. H. P. Lane two thousand two hundred and forty-four dollars, for which he executed his notes and a mortgage covering the land in question and other lands; that on September 2, 1878, he had executed the note and mortgage in suit, to his wife, and that, to further secure Mr. Lane, she assigned to him, as collateral to his notes and mortgage, her said mortgage and the two notes secured thereby, one of which is the note in suit, under an express agreement, that when one thousand dollors was paid on Lane's note and mortgage he would return said notes and mortgage to Mrs. Shaw; that said sum of one thousand dollars was fully paid to Lane; that the real estate in question was sold by defendant Shaw and wife to Francis Hartley, for the sum of nine hundred dollars, all of which was paid to Lane, whereupon he executed a release of his mortgage as to the land bought by Hartley; that Lane consented to the sale, and verbally agreed with Mr. Hartley that he had no further claim on the land bought by Hartley. Defendant Shaw alleges that, whatever interest the plaintiff had in said note and mortgage was acquired after the same became due, and with full knowledge that Lane assigned the same to her in fraud of the rights of the defendant Anna E. Hartley and her grantor, and of the fact, that

said Lane held said note and mortgage only as collateral security, as above stated. The defendant, Anna E. Hartley, answered, denying generally the allegations of the petition, and alleging, in substance, as follows: That the note and mortgage sued upon were fully paid; that this action is barred; that her grantor, Francis Hartley, purchased said land from Shaw and his wife with full covenants of warranty in which both joined; that Mrs. Shaw was the owner of the mortgage sued on, and the same appeared of record in her name; that Francis Hartley paid D. L. and L. M. Shaw nine hundred dollars cash for said land, and took possession thereof under claim of right and color of title; and that neither this defendant nor her grantor ever had any notice that plaintiff owned said note or mortgage, or any interest therein. She also alleges that Mr. Lane held the note and mortgage in suit as collateral security upon the conditions as stated in the answer of defendant Shaw, and that the one thousand dollars had been paid on the mortgage to Lane, and the nine hundred dollars paid by Francis Hartley for said land was paid directly to H. P. Lane, and applied on the mortgage to him. Judgment was entered as follows: "Wherefore, it is adjudged and ordered by the court that the plaintiff have and recover from the defendant, D. L. Shaw, judgment for $1,584.61, interest 10 per cent. on $500, and 6 per cent. on balance; to which he excepts. Decree of foreclosure refused as to Anna E. Hartley, to which plaintiff excepts. Judgment against D. L. Shaw for $55.85 attorney fee, to which he excepts. Judgment in favor of Anna E. Hartley for costs, to which plaintiff excepts." Plaintiff alone appeals.— *Affirmed.*

*Stillwell & Stewart* for appellant.

*J. H. Trewin* for appellee.

GIVEN, J.—I.   The following statement of the facts, which are undisputed or fairly established by the evidence, will be sufficient for the purpose of the questions to be considered:   On September 2, 1878, defendant Shaw executed the note and mortgage, together with another note for the same amount secured by the same mortgage, to his wife, Mrs. Laura M. Shaw; the note in suit to fall due September 2, 1891.   Shaw and wife, being indebted to one H. P. Lane, in the sum of two thousand two hundred and forty-four dollars, executed to him a mortgage to secure said indebtedness on July 10, 1879, upon certain real estate, including that covered by the mortgage to Mrs. Shaw.   At the same time, and as a further security to Mr. Lane, Mrs. Shaw indorsed the note in suit, "Without recourse," and delivered the same to Mr. Lane, and also delivered to him the other note, secured by the same mortgage; Lane agreeing that when one thousand dollars was paid on the indebtedness of two thousand two hundred and forty-four dollars to him, he would return said notes and mortgage to Mrs. Shaw.   It will be observed that this transaction was prior to the maturity of the note in suit.   Some time in the fall of 1879, Lane, for a valuable consideration, transferred the note in suit by delivery to the plaintiff, who received it without knowledge or notice of the agreement by Lane to return the note and mortgage to Mrs. Shaw upon the payment of one thousand dollars.   This transfer, it will also be noticed, was before maturity of the note in suit. About the sixteenth day of March, 1881, Francis Hartley purchased the real estate in question from Mr. and Mrs. Shaw for the consideration of nine hundred

dollars in cash, paid to Mr. Lane, and received their warranty deed therefor. Mr. Hartley went into immediate possession of the land, and thereafter the title to the same was passed to the defendant Anna E. Hartley, who has ever since been in possession. There is some conflict in the evidence as to whether the one thousand dollars was paid to Mr. Lane upon the mortgage indebtedness to him. Shaw testifies that he had paid him one thousand three hundred dollars, but is unable to give dates or amounts. He admits that part of the money paid by Hartley to Lane was used in paying taxes on the mortgaged land. Lane testifies that of the nine hundred dollars received by him from Hartley, but one hundred and sixty-seven dollars was applied on the mortgage indebtedness to him, that the balance was applied in payment of taxes amounting to five hundred and fifty or six hundred dollars, and that the only other credit given upon said mortgage indebtedness to him was fifty dollars. It appears that the other note secured by the mortgage sued upon, was surrendered by Lane, but it is not clear when, nor why. We are inclined to think that it was surrendered as a part of the transaction at the time the nine hundred dollars was received from Hartley. On November 26, 1884, judgment was rendered in favor of Lane against Shaw, for three thousand three hundred and sixty dollars and forty cents, and this, we think, corroborates Lane in his statement as to the amounts that had been paid to him by Shaw, and leaves it quite clear to our minds that the amount of one thousand dollars had not been paid. Mrs. Shaw never made any assignment of the mortgage sued upon, and the record thereof showed it to be in her name. Neither Mr. nor Mrs. Hartley had any notice at the time they took title, of the transfer of the note in suit to the plaintiff, but took title believing

that it was free from all incumbrances. The contention on this appeal is solely between the appellant, Mrs. Jenks, and appellee, Mrs. Hartley, and the question presented is whether appellant is entitled to a decree foreclosing the mortgage in suit as against appellee. Appellee states three reasons why appellant is not entitled to a foreclosure of said mortgage, namely: "As to this defendant the action is barred by the statute of limitations. Defendant and her grantor were innocent purchasers of the land for value from D. L. Shaw and L. M. Shaw, the only persons who, of record, had any interest in it. If Mrs. Jenks was the owner of the note and mortgage, she never placed any evidence of her ownership on record, and, as against the defendant, is estopped from setting up any claim to the property."

II. Defendant, Anna E. Hartley, alleges in her answer "that said notes and mortgage were due September 3, 1881, and that this action was not commenced as to this defendant, until January 1, 1892, and that plaintiff's cause of action is barred by the statute of limitations." She now insists that the action was not commenced, as to her, until she was made a party thereto, and that, as that was more than ten years after the maturity of the note sued upon, the action is barred as to her. Plaintiff does not dispute the claim that the action was not commenced as to Mrs. Hartley until she was made a party thereto, nor is it questioned that this was after the lapse of more than ten years from the maturity of the note. Plaintiff's contention is that the mortgage is merely an incident of the debt; that it follows the debt, and continues to exist so long as the debt is enforceable; and that, as this debt is not barred, the plaintiff is entitled to a foreclosure of the mortgage securing it. The action as against D. L. Shaw was commenced within the ten years, and there is no claim that

it is barred as to him. Shaw states in his deposition that he has lived in South Dakota for thirteen years, but, the bar of the statute not being pleaded as to him, this statement is immaterial. In *Crow v. Vance*, 4 Iowa, 435, this court held that by the assignment of the debt, the assignee is entitled to use all the remedies the assignor might have used to enforce the lien of the mortgage against the debtor. In *Hendershott v. Ping*, 24 Iowa, 137, it is said: "While the lien acquired by virtue of the judgment, may have ceased at the end of ten years, yet the lien acquired by the mortgage continues until the mortgage debt is paid or discharged." In *Clinton County v. Cox*, 37 Iowa, 571, the court uses the following language: "Under the laws of this state a mortgage conveys no interest in or title to lands, but is simply a lien thereon for the purpose of securing the indebtedness which is its foundation. It is an incident—a security in the nature of a lien—of the debt. It survives until the debt be paid or discharged, or the mortgage released. It is a convoy bearing a lien for the protection of the debt, and as long as that exists, it is not relieved of the duty of protection, or rendered ineffective for that purpose. When the debt is discharged, or by operation of law may no longer be enforced, its functions terminate, and not before. These principles determine the question before us, for, unless it appears that the debt is discharged, or is, under the law, no longer capable of being enforced, the deed of trust stands as security for its payment. The non-residence of the debtor, Cox, arrested the operation of the statute of limitations and the remedy upon the indebtedness still exists. The lien of the deed of trust may be enforced to satisfy the debt. These doctrines are so well supported by the authorities cited, and the conclusion we reach is so plainly deducible therefrom, as to forbid discussion. We have held, applying the

same principles, that an admission of a debt and a new promise to pay, which suspends the operation of the statute of limitations, keeps alive the lien of a mortgage given to secure the indebtedness." In *Brown v. Rockhold*, 49 Iowa, 285, it is said: "The general rule is that the mortgage is but a mere incident to the note which it is given to secure, and that nothing short of payment of the debt, or its extinguishment by operation of law, will discharge the mortgage lien." This doctrine is announced in *Kerndt v. Porterfield*, 56 Iowa, 412 (9 N. W. Rep. 322). See, also, *Bank v. Woodman*, 93 Iowa, 668 (62 N. W. Rep. 30); *State v. Stuhtmiller*, 94 Iowa, 750 (61 N. W. Rep. 986). The principle is well established by these and other cases that an action to foreclose the mortgage is not barred so long as the debt which it secures is enforceable. True, in most of the cases the debt was barred upon its face, but was taken out of the operation of the statute by new promise to pay, or by the nonresidence of the debtor, or some other fact that stopped the running of the statute. The principle is alike applicable, whatever may be the facts that rendered the debt enforceable. Appellee's counsel cite and rely upon *Day v. Baldwin*, 34 Iowa, 380, which was an action to foreclose a title bond treated as a mortgage, and for the sale of the premises to satisfy the amount due. The note was barred upon its face, but the maker, Baldwin, who had previously disposed of his interest in the property, was made a defendant, and answered, admitting the indebtedness, and consenting to the sale of the land for the payment of the note, "provided no personal claim be made against him." It was held that, as the petition made no personal claim against Baldwin, but simply against the land, and as Baldwin had no interest in the land, and as his admission of plaintiff's right to recover was made with the proviso that no personal claim be made against him, his admission did

not take the action out of the bar of the statute. We
see nothing in that case in conflict with those cited,
nor with the principle we have announced. Our con-
clusion is that, under the facts of this case, the
plaintiff's right to a decree of foreclosure is not barred
by the statute of limitations.

III.  We next inquire whether appellant is enti-
tled to a decree of foreclosure. We have seen that
appellant is a good-faith purchaser of the negotiable
note sued upon, for value, before due, and without
notice of any infirmities therein. It is a familiar
and undisputed rule of law that the transfer of
the note carried with it the security without an assign-
ment of the mortgage; therefore, if nothing further
appeared, plaintiff would unquestionably be entitled
to a foreclosure. We have also seen that appellee is
possessed of whatever title Francis Hartley acquired
in the property; that Mr. Hartley purchased the prop-
erty from Mr. Shaw for value, and received a deed
therefor from Shaw and wife, with the usual covenant
of warranty of title, in which both joined; also that
Mr. Hartley took the title believing that it was clear
of incumbrance, and without knowledge that this
note had been transferred, was unpaid, and that the
mortgage was unsatisfied on the record. It is not dis-
puted but that by this deed Shaw and wife transferred
all of their interest in the property to Mr. Hartley,
and that they would not be heard to claim any rights
under the mortgage; neither is it disputed that by the
transfer of the note appellant acquired an interest in
the mortgaged property that Shaw and wife could not
convey. Appellant contends that, the mortgage being
unsatisfied of record, it was notice to Mr. Hartley
that should have caused him to inquire whether any
of the notes had been transferred, that he was negli-
gent in not so inquiring, and that appellee must suf-
fer the consequence of that negligence. Appellee

contends that appellant was negligent in not taking and recording an assignment of the mortgage, and therefore she is not entitled to claim under it as against appellee. Mr. Hartley did not examine the record, and did not inquire as to the notes. He seems to have relied upon the assumption that, as Mrs. Shaw, the mortgagee, joined in the deed and in the covenants of warranty therein, the deed was a satisfaction of the mortgage. Appellant did not take and record an assignment of the mortgage, but seems to have relied upon the rule that the security follows the debt secured. The question in this case is whether, without notice of record, the security follows the debt as against one purchasing the mortgaged property as Mr. Hartley did; in other words, whether, as to third persons acting without notice, the assignee of a debt secured by mortgage should be required to place evidence of the transfer on the record. This question is fairly answered in *Bank v. Anderson*, 14 Iowa, 545. After stating that the transfer of the note carried with it the security as between the immediate parties to the transaction, it is said: "But a pertinent inquiry is whether this is equally true as to third persons who had no notice of it, to the extent that they were bound to know that the original mortgagee ceased to have the right to cancel or discharge the mortgage. The security passes to the assignee or holder of the notes as an incident, and upon the principle that the party holding the debt has a right to that which was given to secure it. But is the theory just or tenable which compels a third person to take notice of such transfer, and of the equitable consequences following? Now, as stated above, the mortgagee or payee may be barred by it. And, so, there is no hardship or injustice in requiring the mortgagor to take notice of it if he proposes to satisfy his debt, for he has a right, and the exercise of a proper diligence, demands, that he

should exact the production · of the notes before paying the same. But by what process of reasoning can this principle, or this line of argument, be urged against a third party, who, in utter ignorance of the facts, and of facts too, which he could not ascertain by the use of even extraordinary diligence, takes an incumbrance upon property which is apparently freed from the prior lien? We confess our inability to see its applicability or pertinency." It is further said in that opinion: "But, on the other hand, how easy is it for the assignee of the notes or debt thus secured to protect himself. He can, by having the mortgage assigned on the margin of ·the record, protect himself against all possible fraud on the part of the mortgagee, and leave the evidence of his rights in such a condition as that it must inevitably be seen by any one looking for incumbrances. Or, if not thus, he may take his assignment in the ordinary form, have it duly acknowledged and recorded, and thus give notice of his interest in the security, to third persons." In conclusion, it is said: "A secret or clandestine assignment, whether by parol or upon the instrument itself, or by the transfer of the debt, and however honest the purpose, is liable, as against third persons, to untold abuse. They ought, therefore, to be made a matter of record. The spirit, if not the very letter, of our recording law, requires it. Such a requirement can work no possible hardship, while the contrary rule can only be attended with evil, and that continually. Parties should not be permitted to leave their rights and interests in liens and real estate in such a condition as to injure those who are deceived by appearances, without a record notice to guide them." This case was followed in *McClure v. Burris*, 16 Iowa, 591. In *Bowling v. Cook*, 39 Iowa, 200, the court, referring to these cases, says: "The doctrine is announced in the case first cited, and is followed in

the second, that an assignment of a mortgage, like
other instruments affecting real estate, is invalid
against subsequent purchasers without notice (and a
mortgagee is a purchaser) unless it be recorded. The
subsequent mortgagee would not be affected by an
assignment of a prior mortgage, unless charged with
actual notice, or the assignment has been duly
recorded. Following this doctrine, we hold that, if
the party executing the second mortgage appear from
the record to be the one to whom the first was exe-
cuted, and its assignment is not shown by the record,
the equities of the second mortgage are superior to
the first." It is further said: "In the absence of the
record of an assignment of the mortgage in such a case,
the separation of the mortgage interest and the title
afterwards acquired would not appear so as to defeat the
merger, and a purchaser, having no notice of the assign-
ment, would be warranted in presuming that it had hap-
pened, and the mortgage interest had been thus extin-
guished." In *Parmenter v. Oakley*, 69 Iowa, 389 (28 N. W.
Rep. 653), the court, after referring to *Bowling v. Cook*,
*supra*, and *Reel v. Wilson*, 64 Iowa, 13 (19 N. W. Rep. 814),
says as follows: "The doctrine of these decisions is
applicable to the case at bar. The mortgage, in the
absence of any transfer shown by the record, is pre-
sumed to be owned and controlled by the mortgagee,
and all men may deal with the mortgage or the land,
resting upon this presumption, in the absence of
actual knowledge of the assignment of the mortgage.
The policy of our registry laws is that the records
shall disclose the true condition of lands as to title
and incumbrances. These laws are for the protection
of all concerned in lands, and they should and do apply
to transfers of mortgages as well as to the mortgages
themselves. It is no greater hardship to require the
assignee of a mortgage to record the assignment than
to require the mortgagee to record his mortgage. The

record in both cases is equally demanded for the pro
tection of persons having dealings with the land.
*Vandercook v. Baker*, 48 Iowa, 199, and other cases
cited by plaintiff's counsel, are not in conflict with the
views we have expressed." See, also, *Van Gorder v.
Hanna*, 72 Iowa, 573 (34 N. W. Rep. 332). In *Liver-
more v. Maxwell*, 87 Iowa, 706 (55 N. W. Rep. 40), it is
said: "If the assignment of the notes did not operate
as an equitable assignment of the trust deed, the
plaintiff would have no rights under it; but, having
the equitable assignment, he must, under our record-
ing acts, place his assignment on record to bind
subsequent purchasers and mortgagees who act
without notice. The plaintiff, by his failure to have
his assignment recorded, induced the defendant to
make the loan it did, and put it into the power of J. M.
Dunn to obtain and embezzle the money; and under the
rule quoted above, he must bear the consequences."
In *Quincy v. Ginsbach*, 92 Iowa, 144 (60 N. W. Rep.
511), the rule of the foregoing case is followed. Appel-
lant's counsel quote from *Bank v. Woodman*, 93 Iowa,
668 (62 N. W. Rep. 31), as follows: "The law makes
provision for the satisfaction of the record of mort-
gages when the debts they secure are paid, and the
practice is so common, that where one is not canceled,
it naturally gives rise to the thought that it is not
paid, even though the period of limitation has run."
The question in that case was, whether the debt was
barred, and the language quoted is not applicable to a
case where the mortgagee joins in the conveyance
that operates as a cancellation of the mortgage
as to the mortgagee. it appears to us entirely
clear, under the authorities cited, that the rule
in this state is, that the assignee of a debt secured by
mortgage must give notice on the record of the
transfer, to be entitled to preference over subsequent

purchasers or mortgagees, without notice of the transfer.  So viewing the law, it follows that the decree of the district court must be AFFIRMED.