JAMES BARR AMES, APPELLANT, V. FRANCES ELLEN MILLER ET AL., REVIVED IN THE NAME OF ISAAC W. TEEGARDEN ET AL., APPELLEES.

FILED JUNE 18, 1902.   No. 11,075.

1. **Deed: MORTGAGE: SUBSEQUENT PURCHASER: FIRST RECORDED.** Deeds, mortgages and other instruments required to be recorded are void as to subsequent purchasers whose deeds, mortgages or other instruments shall be first recorded. Compiled Statutes, ch. 73, sec. 16.

2. **Deed: DEFINITION.** The term "deed" as used in said chapter embraces every instrument in writing by which any real estate or interest therein is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills, and leases for one year or for a less time. Compiled Statutes, ch. 73, sec. 46.

3. **Assignment of Real Estate Mortgage: INSTRUMENT AFFECTING TITLE.** An assignment of a real estate mortgage, securing a negotiable promissory note, to the indorsee of such note is an instrument affecting the title to real estate within the purview and meaning of the above-mentioned sections.

4. **Real Estate Mortgage: MORTGAGOR BECOMES OWNER OF FEE: MERGER.** Ordinarily, when one having a mortgage on real estate becomes the owner of the fee, the former estate is merged in the latter. *Wyatt-Bullard Lumber Co. v. Bourke*, 55 Nebr., 9.

5. ———: ———: ———: EXPRESS OR IMPLIED INTENTION: CONVERSE OF RULE. Where, however, in such a case, an intention of the holder is expressed or may be implied or inferred, that the two estates shall remain separate and distinct, the intention will prevail and no merger will result.

6. Lesser Estate: GREATER: MERGER. Where the owner of real estate, in whom apparently has merged the lesser into the greater estate, treats the two estates as having coalesced, and assumes to convey the full estate to another, this would be conclusive as to him on the question of merger, which would be held irrevocably to have taken place.

7. Real Estate: GRANTOR: RECORD: ESTATE: MERGER: BONA-FIDE PURCHASER: EQUITABLE LIEN-HOLDER: PROTECTION TO PURCHASER. Where a grantor of real estate, who, as disclosed by the record, is the owner of a legal and mortgage estate therein, which apparently have merged, and who assumes and professes to be the owner of the entire estate and to be able to convey the same, sells such real estate to a bona-fide purchaser who pays full value therefor, relying on the state of the public records, which disclose an apparent merger of the mortgage into the legal estate in the hands of his grantor, and when, from the facts and circumstances surrounding the transaction, and upon due inquiry, nothing appears from which a contrary intent as to a merger of the two estates may be inferred, such purchaser will be protected in his title so obtained as against one who has an equitable lien on such property as assignee of the mortgagee, but who has failed to have recorded in the proper office an assignment of the mortgage under which he claims.

8. Facts and Circumstances: ESTATE: MERGER: BONA-FIDE PURCHASER: ASSIGNMENT: RECORD. Under the facts and circumstances as disclosed by the record in this action, *held*, that the mortgage and legal estate had merged into one while held by the grantor of appellee, and that appellee, as a bona-fide purchaser, obtained title to the property divested of the lien of the mortgage held by appellant as assignee, who had failed and neglected to have recorded his assignment of such mortgage.

APPEAL from the district court for Cass county. Heard below before RAMSEY, J. *Affirmed.*

*Montgomery & Hall* and *Byron Clark,* for appellant.

*Jesse L. Root, contra.*

HOLCOMB, J.

From findings and a decree adverse to him the plaintiff in the court below appeals his cause to this court. In the

controversy is involved the question of conflicting rights and interests, as between the plaintiff, who is the transferee before maturity of a negotiable promissory note secured by a mortgage on real estate, the lien of which he is seeking by this action to enforce, and the appellee, Wolcott, who claims such real estate as a bona-fide purchaser for value divested of any lien asserted by plaintiff arising by virtue of the provisions of the mortgage he holds. While other questions are presented for our consideration by appellee which he claims preclude a recovery by the plaintiff, we think there is but one question of a decisive character upon which the decree of the trial court can be upheld, and if upon consideration that should be resolved in favor of the appellant, then his right to the relief asked is fully established, and the decree from which he appeals must be reversed and vacated. The decisive question is whether, in so far as it affects the rights of the appellee, there has been a merger of the legal and equitable estate in the land covered by the mortgage in the grantor of the appellee Wolcott in such a way as to give to Wolcott, under his conveyance from such grantor, the full estate in the land and unaffected by the mortgage lien theretofore existing thereon. We assume that the plaintiff became the owner and holder of the note and mortgage before the maturity of the debt and is entitled to all the protection accorded to the holder of such paper, qualified, however, by any loss of right which he may have sustained by reason of his failure and neglect to record an assignment of the mortgage to him showing his interest in the land by virtue of the mortgage and the assignment thereof, which it is conceded was never done. So far as disclosed by the record, the estate and interest in the land created by the mortgage remained in the original mortgagee in whose favor the instrument was executed. The appellee Wolcott's rights are based substantially on the following facts, as disclosed by the record: After the execution and delivery of the note and mortgage under which plaintiff claims, and after their transfer to him or his

·immediate assignor, a judgment was obtained against the owner of the legal title to the land, who had purchased from the mortgagor, on which execution was issued, and levied by the sheriff on the mortgaged land. In making the appraisement for the purpose of sale under the levy of the execution there was deducted the amount of the mortgage debt and some other recorded incumbrances against the land. After appraisement and due advertisement, the land was offered for sale and sold to one B. A. Gibson, to whom the mortgage was originally given under which plaintiff, as assignee, now claims. Soon after the confirmation of sale and the execution of the sheriff's deed to the purchaser, Gibson, negotiations were entered into through an agent for the sale of the property to the appellee Wolcott, who, in pursuance of such negotiations, became the purchaser of the property. It is indisputably established by the record that in the purchase of the land, Wolcott acted in the best of faith, and paid full value for the property, believing he was securing title thereto divested of the lien of the mortgage which appeared of record as being in favor of his grantor, Gibson. The note at this time was long past due. At the time of the purchase, Wolcott made inquiry as to the status of the mortgage, and was assured by Gibson that, "as he had the sheriff's deed to the property and was the owner of the mortgage, he had all there was in the property and his warranty was good." An attorney present at the time the negotiations were closed also gave the purchaser advice substantially corroborating the views of Gibson to the effect that a deed executed by Gibson under the circumstances would convey to him title clear of the apparent incumbrance by virtue of the mortgage existing thereon. It is altogether clear that Wolcott, in purchasing the land and paying full value therefor, relied on the then state of the public records of the county affecting conveyances of real estate or interests therein, and, they disclosing that his grantor was the owner of the mortgage estate, and having acquired,

through the execution sale, the legal title also, that he might safely deal with him as one having the entire estate in and to the land which he was purchasing, and that he consummated the purchase in that belief. Under such circumstances may it rightfully be said that as to the purchaser, Wolcott, there was a merger of the two estates in his grantor, and he therefore obtained title to the property divested of the lien which the plaintiff is seeking to enforce? It is urged by counsel for appellant that there can be no union of the two estates, because, when Gibson purchased under the execution and obtained legal title to the property, he was not in fact the owner of the mortgage before executed and delivered to him, but which he had, prior to obtaining the legal estate, transferred to others. But in dealing with registry acts which are enacted into law expressly for the protection of those who, in good faith, deal and engage in a business transaction with reference to real estate, relying on the public records, of which constructive notice is always imputed, the rights of the parties are adjusted and determined, not from the concrete fact of ownership, but from the record title, on which they may safely rely when acting in good faith and without notice of the true conditions of affairs. We meet with innumerable instances where actual owners of substantial interests in real estate acquired by them in good faith and for value lose such interest because not complying with the registry laws, or by failing to take notice of the state of the record, of which the law says knowledge will be imputed even though actual personal notice is wanting. By the provisions of section 16, chapter 73, of the Compiled Statutes, deeds, mortgages and other instruments required to be recorded are void as to subsequent purchasers without notice whose deeds, mortgages or other instruments shall be first recorded. And by section 46, the term "deed" is construed to embrace every instrument in writing by which any real estate or interest therein is created, aliened, mortgaged or assigned, or by which the title to

any real estate may be affected in law or equity, except last wills and leases for one year or for a less time. It can hardly be doubted that an assignment of a mortgage comes within the purview of section 46, and a failure to record the same by the person claiming rights thereunder will, in many instances, deprive such assignee of any right to enforce a lien arising by virtue of a mortgage, and the assignment thereof, as against a subsequent purchaser in good faith, who has relied upon the public records, and thereby acquired a better title or superior equity in and to such property. The scope and purpose of a statute providing for the recording of instruments affecting the title to real estate and the rights of parties claiming under its provisions is forcibly illustrated in the case of bona-fide purchasers of real estate who rely on a record disclosing release of a mortgage lien executed by the mortgagee or an assignee of record of the mortgagee, and who apparently is the owner, and has authority to release such instrument, although at the time, actually and in fact having no interest in the property by virtue of the released instrument, because previously thereto such party had sold and transferred all his interest to some third person of whom the record gives no information or notice. *Whipple v. Fowler*, 41 Nebr., 675; *Cram v. Cotrell*, 48 Nebr., 646; *Porter v. Ourada*, 51 Nebr., 510.

"Ordinarily," it is said, "when one having a mortgage on real estate becomes the owner of the fee the former estate is merged in the latter." *Wyatt-Bullard Lumber Co. v. Bourke*, 55 Nebr., 9. If this proposition of law is correct and has any practical value,—if it means anything when a record discloses that two unequal estates have apparently coalesced and all the facts and circumstances so far as known strengthen and confirm the inferences to be drawn from the record, and the person in whom the two estates of record have joined so treat his title,—then, in principle, can there be any distinction as to the rights of a bona-fide purchaser relying on such record and the expressed intention of the

party in whom such estates have joined, who is his grantor, and the purchasers of property relying on a release of a mortgage by one having the apparent authority to make such release, as in the several cases just cited? If from the state of the public record and the facts surrounding the transaction by which the appellee acquired title he was justified in dealing with his grantor as though he had acquired the entire estate by reason of the mortgage and legal title having become merged, then as to such bona-fide purchaser the mortgage estate was destroyed, and he became the owner of the property divested of the mortgage lien in favor of some third party, who was a stranger to the record. It seems to us that in principle, and for reasons just as convincing, his purchase would give him as good title as would be the case were the mortgage released by the mortgagee and apparent owner prior to the purchase, and the appellee became a buyer in good faith, relying on a record which disclosed a release of the mortgage lien by one apparently holding the legal title thereto, and having the right and authority to execute such release. In the one instance a prospective purchaser examines the public records, and finds that, although a mortgage incumbrance had existed on the property, it had been released and discharged by one, so far as the record disclosed, who was the owner, and authorized to enter satisfaction thereof; and that his grantor was possessed of a perfect title, which he, as purchaser, could safely rely on. In the other, the record and surrounding circumstances disclosed that the grantor of the prospective buyer was possessed of the entire estate in the property he was contemplating purchasing; that the mortgage and legal estate had become merged, and that the seller had authority to convey all the title and estate he assumed to own and to be able to convey. The two purchasers would, on principle, stand on an equality, and be entitled to equal protection when their title to the property was assailed by one having an actual interest therein, evidenced by an instrument not recorded, and of which the purchasers

were without knowledge or notice.  The record discloses,
at least presumptively, a merger of the two titles.  The
whole transaction was and is consistent with an intention
on the part of the, purchaser, Gibson, to have the two
estates coalesce.  He did not assume or agree to pay the
mortgage debt when he took by purchase at execution sale
the estate of the execution debtor.  He purchased the
equity of redemption, obtained the legal title and the
entire interest in the property remaining after the amount
of the mortgage lien had been deducted from the appraised
value of the land.  It is true he paid only a nominal con-
sideration ($1), but this, in view of the confirmation of
the sale, may be presumed to be all the property was worth
over and above the mortgage interest therein and other
incumbrances thereon.  He became a purchaser of all the
estate held by the execution debtor, as much so as if he
had received from him a warranty deed wherein was ex-
cepted in his covenants the incumbrances deducted by the
appraisers in making the appraisement, or as would have
been the case had the judgment debtor conveyed by quit-
claim deed all of his interest, right and title in and to the
property.  He was, according to the record, the owner of
the mortgage and the estate created thereby, and by the
purchase at execution sale of all the remainder of the
estate, and the two estates thereby centring in the one
person with no intervening rights, ordinarily they will be
merged into the greater.  While this rule is not without
its exceptions, as where an intention to the contrary is
expressed or may be implied or inferred, it is to be borne
in mind in this case every fact and circumstance shows
an intention on the part of the appellee's grantor that the
two estates should merge, and that upon inquiry by the
appellee Wolcott, out of an abundance of caution, he was
expressly advised by his grantor that the two estates had
joined, and that by the deed then to be executed the entire
estate would be conveyed to him.  It is quite obvious that
as to appellee's grantor, after professing to convey the
entire estate to his grantee, and executing an instrument

to that effect, this would be conclusive on the question of merger, and no intention to keep the estates separate could be inferred, but, on the contrary, the merger would be held irrevocably to have taken place. *James v. Morey,* 2 Cowen [N. Y.], 246, 14 Am. Dec., 475. As to whether or not a merger was intended, certainly the appellee had made all the inquiries it was possible for him to make, and brought himself within the rule stated in *Peterborough Savings Bank v. Pierce,* 54 Nebr., 712, although in that case the rule was carried to its uttermost limit, and was vigorously dissented from by one of the judges and two of the then court commissioners. There being, then, nothing in the record or in the conveyances through which the appellee claims, and no information coming to him by inquiry that the apparent union of the two estates did not operate as a merger, and that such was not the intention of his grantor, then we think, on principle, that as to him, a union of the two estates was in fact accomplished, and that he obtained title to the property in controversy discharged of the lien sought to be enforced by the plaintiff and appellant. As stated in *Mathews v. Jones,* 47 Nebr., 616: "Whenever a person acquires a greater and a lesser estate in the same property and there is no intervening estate, the lesser does not further exist as a separate estate, but is destroyed by or is considered in law as merged in the greater, but when, in such a case, an intention that the estates remain separate and distinct is expressed or may be implied or inferred, no merger can ensue but the intention will prevail." This rule was first announced in *Miller v. Finn,* 1 Nebr., 254, and has since been reiterated and adhered to in *Peterborough Savings Bank v. Pierce, supra; Wyatt-Bullard Lumber Co. v. Bourke, supra; Oak Creek Valley Bank v. Helmer,* 59 Nebr., 176, 188. We conclude, therefore, that as to the appellee, and under the facts and circumstances surrounding the transaction by which he acquired title, he was justified in purchasing the land on the theory and in the belief that his grantor was the owner of the entire estate he assumed to sell; that the two estates

had merged by the purchase of the outstanding legal title
and the mortgage lien was thereby destroyed; and that
the plaintiff, because of his failure and neglect to record
the assignment of his mortgage, has lost his right to en-
force his mortgage lien on the premises described therein
as against the purchaser of such real estate. This, as be-
tween the parties, gives to the purchaser the superior
equity, to which we think he is entitled. He has acted in
the utmost good faith, paid full value for the land, and
has done all that could reasonably be required or could be
exacted of an ordinarily prudent person. The appellant
has put it in the power of his assignor and the mortgagee
to perpetrate the wrong which must result in a loss either
to him or the appellee, and, as between the two, he should
be made to suffer, rather than the one altogether free from
fault. The registry act should mean something, and he
who would claim an interest in real estate should comply
with the letter and spirit of its provisions and thus pre-
vent injury and damage to those who deal with respect to
such property relying on the record as they find it, and
as they of right may and should do. The appellant has
failed to take ordinary business-precaution to protect his
mortgage lien, if he relied on the mortgage security in
the purchase of the note, which may be doubted,—and he
alone should suffer because of such neglect. Holders of
such instruments must not forget their duty to the busi-
ness world generally, and that those who deal with refer-
ence to real property have a right to rely upon the title
thereto and interest therein as disclosed by the public
record. In our consideration of the case, we have not been
unmindful of the rule as to a mortgage being regarded as
an incident to the debt it secures, and passes with an as-
signment of the latter, and that the payment to the mort-
gagee, who has assigned the debt, and who is not author-
ized to receive it, which has been a fruitful source of
litigation, will not satisfy the debt or discharge the lien,
even though no assignment of the mortgage is placed of
record. But those questions do not enter into the case at

bar. The question here is whether one who purchases real property, relying on a record which shows a discharge or destruction of a mortgage lien thereon by one who apparently is possessed with authority to accomplish that result, will be protected against one who, having an interest in such real estate, has failed or neglected to have recorded the evidence of such interest. We conclude, therefore, that the purchaser, under the circumstances as disclosed by the record in the case at bar, should and ought to be protected.

The decree of the district court is, for the reasons given,

AFFIRMED.