THE ROLETTE COUNTY BANK of St. John, N. Dak., a corporation, and FRED E. HARRIS, its receiver, Appellant, v. JOSEPHINE HANLYN, formerly JOSEPHINE HOWE, THOMAS J. CLIFFORD, G. L. PETERSON, FARMERS NATIONAL BANK of Hendricks, Minn., a corporation, WILLIAM H. ALLEN, and all other persons unknown, claiming any estate or interest in or lien or incumbrance upon the property described in the complaint, Respondents.

(183 N. W. 260.)

**Mortgages — recording acts apply to executory contracts, mortgages and assignments.**

C., the owner of certain land, contracted to sell it to Mrs. H., the latter giving notes for the purchase price. The contract was recorded. C. transferred one of the notes to the plaintiff and subsequently deeded the land to the H. bank. The H. bank obtained a quit-claim deed from Mrs. H., and subsequently sold the land to A. who paid full value for it. It is *held*:

1. Following Shelly v. Mikkelson, 5 N. D. 22, 63 N. W. 210; Henniges v. Paschke, 9 N. D. 489; Simonson v. Wenzel, 27 N. D. 638, 147 N. W. 804, the recording acts in this state apply to executory contracts for the sale of land, to mortgages, and to assignments of mortgages.

**Mortgages — claim of purchaser of note failing to record assignments of mortgage inferior to subsequent purchaser in good faith without notice.**

2. A purchaser of a note secured by a mortgage upon an equitable interest in land acquires an equitable interest in the mortgage; but, following Henniges v. Paschke, supra, upon failure to take and record an assignment of the security his claim is inferior to that of a subsequent purchaser of the land in good faith and for value without notice.

**Vendor and purchaser — purchaser may rely upon public records to determine existence of mortgage liens.**

3. One purchasing real property may rely upon the public records to determine the existence of mortgage liens, and where such a lien is discharged of record by the person or persons having prima facie authority to discharge it a subsequent purchaser of the property is not bound to inquire as to whether negotiable, secured notes are outstanding in the hands of assignees where there is no record of such assignments.

Opinion filed May 18, 1921.

Appeal from the District Court of Rolette County, *Buttz*, J.

Affirmed.

*Fred E. Harris,* for appellant.

The positions of the vendor and purchaser, are analagous to that of a mortgagee and mortgagor, and identical with that in which the mortgagee takes a deed as security for the performance of the mortgagor's obligations. Miller v. Shelburn, 15 N. D. 182, 107 N. W. 51; Jewett v. Black, 82 N. W. 375, 60 Neb. 173, Dorsey v. Hall, 7 Neb. 460. In re Boyle's estate, 134 N. W. 590, 128 Ia. 551; Phillis v. Gross, 143 N. W. 473, 32 S. D. 438; McCreary v. McGregor, (Iowa) 167 N. W. 633; Ried v. Gorman, 158 N. W. 780, 37 S. D. 314; Shraiberg v. Hanson, 163 N. W. 1032, 138 Minn. 80.

*Cuthbert, Smythe & Wheeler,* for respondents.

The purchaser under a contract for deed, does not hold the legal title, having an equitable interest only. Pom. Eq. Juris., § 367; Davie v. Williams, 130 Ala. 530, 30 South 488, 54 L. R. A. 749, 89 Am. St. Rep. 55; Chappell v. McKnight, 108 Ill. 570; Warvelle on Venders, (2 ed.) § 176.

In a great many jurisdictions the rule is laid down that the implied lien of the vender is a personal privilege merely and is unassignable. 27 R. C. L. § 330, and Hecht v. Spears, 27 Ark. 229, 11 Am. Rep. 784; Baum v. Grigsby, 21 Cal. 172, 81 Am. Dec. 153; Avery v. Clark, 87 Cal. 619, 25 Pac. 919, 22 A. S. R. 272.

"And assuming that it is assignable it has been held that it must be assigned especially and therefore the mere assignment or transfer of a purchase money note does not carry the lien with it." 27 R. C. L. and as a part of § 330.

"The vendor's equitable lien for the purchase price of real estate will not follow the land after it is sold to a bona fide purchaser without notice." Selby v. Stanley, 4 Minn. 65; Bang v. Brett, 63 N. W. 1067; McMillan v. Rose, 6 N. W. 728 (Ia.); Welburn v. Williams, 9 Ga. 86, 52 Am. Dec. 427.

BIRDZELL, J. This is an appeal from an order sustaining the separate

demurrer of the defendant, William H. Allen, to the complaint upon the ground that the complaint did not state facts sufficient to constitute a cause of action against him. The action is one brought primarily to charge land purchased by Allen with a lien in favor of the plaintiff, securing a note purchased by the latter from Thomas J. Clifford, the former owner of the land. The facts pleaded in the complaint, so far as material to the legal question presented upon this appeal, are as follows:

On October 5, 1916, Thomas Clifford was the owner of certain lands in Rolette county. On that date he entered into a contract with one Josephine Howe, later Josephine Hanlyn, for the sale of the land to her. The terms of payment were $300 upon delivery of the contract, $1200 March 1, 1917, $11,555.00 according to the terms of 11 promissory notes for $1000 each, due one each year beginning November 1, 1917, and one note for $555, due November 1, 1928. Josephine Howe paid $2500 under the contract, which included all payments due to November 1, 1917. The contract was recorded August 8, 1918. Prior to July 22, 1918, Clifford transferred to the plaintiff bank the $1000 note which would fall due November 1, 1919, the bank taking the note as a holder in due course. On December 26, 1918, Clifford sold the land covered by the contract to the Farmers National Bank of Hendricks, Minnesota, conveying title by warranty deed. The bank assumed and agreed to carry out the contract with Josephine Howe. Subsequently the grantee bank, through its cashier, G. L. Peterson, procured a quit-claim deed from Josephine Howe Hanlyn, quit-claiming to him all her interest in and to the land, Peterson agreeing, as part of the consideration therefor, "to pay the balance of the purchase price upon said land, then owing by the said Josephine Howe Hanlyn, including the plaintiff's note herein, and the whole of said amount remaining due on account of said contract." (This is the allegation in the complaint; the obligation is not alleged to be contained in the quit-claim deed). The quit-claim deed and all Peterson's transactions concerning the land were taken and had for the benefit of the Farmers National Bank and with its full knowledge, consent and authority. Thereafter, on November 6, 1919, the Farmers National Bank sold and conveyed the premises by warranty deed to the defendant Allen for a consideration of $18,000.00 and Allen is now the record owner. The plaintiff asks that as to it the conveyance of the property by Clifford to the Farmers National Bank and by the bank to the defendant Allen be adjudged null and void;

that the plaintiff be adjudged to be the equitable owner of the land by virtue of its ownership of the $1000 note; and that it be adjudged to have a lien upon the land for the payment of this note, protest fees, interest, costs and disbursements, such lien to be prior and superior to the rights of the defendants.

From the facts pleaded as stated above, certain legal conclusions follow as a matter of course, none of which are open to serious controversy. They are: Upon the sale of the land under the executory contract an equitable conversion was effected, so that in equity the land was regarded as belonging to Josephine Howe and the purchase price to Clifford. The legal title was retained by Clifford as security for the payment of the purchase price. In a sense the equitable owner, Josephine Howe, mortgaged to Clifford her ownership to secure the purchase price notes. When Clifford transferred one of these notes to the Rolette County Bank the security which was incident to the debt was likewise transferred in equity. So that as against Josephine Howe the Rolette County Bank could avail itself of the security to the same extent that Clifford could, had the notes remained in his hands. When Clifford transferred the legal title to the land to the Farmers National Bank of Hendricks, Minnesota, he effected an assignment of his rights under the sale contract, and when Josephine Hanlyn quit-claimed to Peterson, who was acting for the bank, she released the obligation of Clifford and the Hendricks bank to hold either the title or her equitable interest as security for the payment of the notes, and upon payment to convey to her the legal title. The bank, through Peterson, had assumed the payment of the notes as a principal obligation. In short, by the quit-claim deed Mrs. Howe-Hanlyn released her rights under the contract. The simple question presented on these facts, considered in the light of these indisputable, legal conclusions, is this: May Allen, the subsequent purchaser from the bank, safely rely upon the record which shows the chain of legal title running to his grantor and a satisfaction of all equitable claims or liens incident to the land contract by the person in whose favor these equitable claims or liens prima facie exist, or is the purchaser, taking the legal title with record notice of the existence of the contract, charged with notice of the disposition of all the negotiable notes for which the land is security?

We have found this question to be more difficult of solution than might appear from the simple statement of it. Its various phases have undergone extended discussion in the various authorities that have had

occasion to consider it and the conclusions arrived at have not been harmonious; nor have the conclusions reached even by individual authorities, at various times when the question has been under consideration, reflected either permanency or consistency. The question has sometimes turned upon doctrines of priority as between successive assignees of equitable interests, where one had drawn to himself the legal title or had acquired a superior right to call for it. The solution in these circumstances has been held to depend upon the application of the maxim that where the equities are equal the legal title will prevail. Under similar facts it has sometimes been thought more appropriate in determining priorities between the assignee of an interest under a mortgage, no assignment being of record, and a subsequent purchaser or encumbrancer, to apply the equitable maxim that, as between equal equities, the one prior in point of time should prevail. In the more recent cases, however, where the question has arisen, it has generally turned upon the construction and application of the recording statutes with relation to assignments of mortgages. It will be seen upon examination of modern recording statutes that they are generally so framed as to embrace assignments of mortgages, both legal and equitable, as well as other instruments affecting legal title or equitable interests in real property. The tendency thus to enlarge the scope of the registry acts is indicated in the 7th ed. of Jones on Mortgages, § 476, as follows:

"Equitable mortgages are generally held to be within the recording acts as much as are legal mortgages. At first a different interpretation was put upon the acts, and a mortgage of an equity or of an equitable estate was not constructive notice when registered. But at an early day in this country it was established, either judicially or by statute, that all rights, incumbrances, or conveyances touching or in any way concerning land, should appear upon the public records, and that conveyances of equitable interests as well as legal were within the registry acts. * * *

Generally the record of an agreement constituting an equitable mortgage is notice to a subsequent purchaser of the legal estate from the same grantor."

See also § 479.

In this state the recording statutes have uniformly been construed in the liberal manner prevalent elsewhere. It is held that a bond for deed may be recorded, Shelly v. Mikkelson, 5 N. D. 22, 63 N. W. 210; also that a purchaser under an executory contract has a mortgageable interest

and that a mortgage given by him is within the recording statutes. Simonson v. Wenzel, 27 N. D. 638, 147 N. W. 804. The statutes relating to mortgages make specific provision for the recording of assignments. §§ 6742-3, Comp. Laws 1913; Henniges v. Paschke, 9 N. D. 489, 84 N. W. 350; Merrill v. Luce, et al. 6 S. D. 354, 61 N. W. 43. And the effect of failure to record is elsewhere specifically stated. § 5594, Comp. Laws 1913.

Where the decisions turn upon the recording statutes the assignee of an interest in the mortgage who fails to record it is either considered at fault or not, depending upon the application of the statute. If he is at fault, his interest is not protected as against a subsequent bona fide purchaser who relies upon the record for the reason that, as between the two, he whose omission of duty has made the loss possible should suffer. Our examination of the cases dealing with the question of priority in the general circumstances stated leads us to the conclusion that the best considered ones indicate a trend in favor of supporting titles to real property acquired in good faith and in reliance upon a record, as against equitable claims resulting from transactions not noted on the title records. It would seem that sound policy would require the giving of stability to titles acquired by persons who, in good faith, rely upon the public records. Stability would certainly be impaired if protection is accorded to those whose interests are of an equitable character and who have not been sufficiently diligent to cause to be entered upon the records the evidence thereof. An apt expression of this policy is found in the case of Williams v. Jackson, 107 U. S. 478. In that case it appeared that land had been conveyed to trustees in fee in trust for the payment of certain negotiable notes thereby secured. The trust deed was recorded and the notes transferred to an endorsee in good faith and for value. Before the maturity of the notes and while they were thus in the hands of the endorsee, the payee and the trustee released to the grantor of record the trust deed, whereupon the grantor obtained a second loan upon the same property by executing and recording a second trust deed. In disposing of the questions of priority between the holders of the notes secured by the first and second trust deeds, the court, among other things, said:

"It was suggested in argument that as the first deed of trust showed that the notes secured thereby were negotiable and were not yet payable, and that the land was not intended to be released from this trust until all the notes were paid, Williams was negligent in not making further in-

quiry into the fact whether they were still unpaid. But of whom should he have made inquiry? The trustees under the first deed and the original holder of the notes secured thereby having expressly asserted under their own hands and seals that the notes had been paid, and Sweet and wife having apparently concurred in the assertion by accepting the deed of release and putting it on record, he certainly was not bound to inquire of any of them as to the truth of that fact; and there was no other person to whom he could apply for information, for he did not know that the notes had ever been negotiated, and he had no reason to suppose that they had not been canceled and destroyed.

"To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof of knowledge, fraud, or gross or willful negligence, on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business. Hine v. Dodd, 2 Atk. 275; Jones v. Smith, 1 Hare, 43; S. C., 1 Phill. 244; Agra Bank v. Barry, Irish R., 6 Eq. 128, and L. R., 7 H. L. 135; Wilson v. Wall, 6 Wall., 83 (73 U. S. XVIII., 727); Norman v. Towne, 130 Mass., 52.

"The equity of Williams being at least equal with that of the plaintiffs, the legal title held for Williams must prevail, and he is entitled to priority. The decree appealed from is, in this respect, erroneous and must be reversed."

This doctrine has heretofore been specifically approved in this state in the case of Henniges v. Paschke, supra, where the purchaser of a promissory note secured by a real estate mortgage, who neglected to take and place on record an assignment of the mortgage was held to have a right inferior to that of a purchaser of the premises who took title in reliance upon the record together with a satisfaction of the mortgage executed by the mortgagee. The applicable holdings in the case are:

(a) Assignments of real estate mortgages are conveyances within the recording acts and if not recorded are void as to subsequent mortgagees;

(b) Upon the equitable principle that where one of two or more innocent persons must suffer for the wrongful acts of the third, he must suffer who left it in the power of the third person to do the wrong; and

(c) According to this principle (b), the purchaser of a secured note who neglects to take and place of record an assignment of the security must yield to a good faith purchaser of the premises. The following authorities will be found to support the same conclusions: Newman v.

Fidelity Savings Ass'n. 14 Ariz. 354, 128 Pac. 53; Ogle v. Turpin, 102 Ill. 148; Howard v. Ross, 5 Bradw. (Ill. App.) 456; Conn. Mut. Life Ins. Co. v. Talbot, et al. 113 Ind. 373 (where the provisions of a recording act authorizing recording of assignments of mortgages led the court to adopt a rule contrary to its previous decisions in Reeves v. Hayes, et al. 95 Ind. 521; Bank v. Anderson, 14 Iowa 545; McClure v. Burris, 16 Iowa 591; Bowling v. Cook, 39 Iowa, 200; Parmenter v. Oakley, 69 Iowa, 389; Livermore v. Maxwell, 87 Iowa 706, 55 N. W. 40; Central Trust Co. of Ill. v. Stepanek, 115 N. W. (Iowa) 891, 15 L. R. A. (N. S.) 1025; James, et al. v. Newman, et al. 126 N. W. (Iowa) 781; Jenks v. Shaw, 99 Iowa, 604; Lewis v. Kirk, 28 Kan. 356; Swasey v. Emerson, 168 Mass. 118; Ferguson v. Glassford, 68 Mich. 36, 47; Whipple v. Fowler, 41 Neb. 675, 60 N. W. 15; Ames v. Miller, 65 Neb. 204, 91 N. W. 250; Schwartz v. Laist, 13 Ohio State, 419; Henderson v. Pilgrim, 22 Tex. 464; Ladd v. Campbell, 56 Vt. 529; Friend v. Yahr, 126 Wis. 291, 104 N. W. 997; Marling v. Nomensen, 127 Wis. 363, 106 N. W. 844; Marling v. Jones, 138 Wis. 82; Note, 15 L. R. A. (N. S.) 1025 and Note, L. R. A. (N. S.) 1915F 554; 19 R. C. L. 364, 365; Jones on Mortgages, 7th ed. § 479 (note change in text between 1 Jones on Mortgages, 4th ed. § 474, and 1 Jones on Mortgages, 7th ed. § 474); 2 Jones on Mortgages, 7th ed. § 820.

For contrary authorities, see Hebert v. Fellheimer, 115 Ark. 366, 171 S. W. 144; Northrup v. Reese, 67 So. (Fla.) 136; Hussey v. Fisher, 94 Me. 301; Jordon v. Cheney, 74 Me. 359; Cooper v. Newell, 263 Mo. 190; 172 S. W. 326.

Up to this point we have dealt with the case in hand as though it were in all ways parallel with a case where a mortgagee, after transferring mortgage notes, releases the mortgage and a bona fide purchaser or incumbrancer acquires an interest in the property without actual or constructive notice of the transfer of the notes. We have done this for the reason that we are of the opinion that the plaintiff cannot possibly stand in a stronger situation with reference to the security of which it seeks to avail itself than as though a mortgage had in fact been given by Mrs. Howe-Hanlyn to Clifford. In reality the plaintiff's position is, if anything, weaker than that of an equitable assignee of an interest in a real estate mortgage.

We have also treated the circumstances of the transfer of legal title from Clifford to the Hendricks bank and the quit-claim deed from Mrs.

Howe-Hanlyn as being tantamount to a release of a mortgage by the mortgagee. We are of the opinion that these transactions do in law amount to a release of any mortgage interest Clifford acquired in Mrs. Howe-Hanlyn's equitable estate, as well as a release of all the equitable estate that Mrs. Howe-Hanlyn acquired by the contract. Certainly Clifford parted with all he had when he gave a warranty deed to the Hendricks bank and just as conclusively did Mrs. Howe-Hanlyn release all her right to have the title held as security for her notes when she gave the quit-claim deed. This must at least be held to be the effect as to third persons, whatever her rights might have been as to Peterson or the bank in case she had subsequently been called upon to pay one of the notes. As to the effect of a quit-claim deed, see 8 R. C. L. 926, 1024. By these transactions the Hendricks bank was clearly put in the position of owner of the legal and equitable title to the property free and clear of all obligations incident to the purchase contract of Mrs. Howe-Hanlyn. In this situation third parties clearly had the undoubted right to deal with the owner on the strength of the title and right thus appearing of record. Of the authorities hereinbefore cited, the following will be found to support the right of the purchaser where he has dealt with a mortgagee on the strength of a conveyance from the mortgagor or on the strength of a satisfaction of a mortgage: Henniges v. Paschke, supra; Ogle v. Turpin, supra; James v. Newman, supra; Jenks v. Shaw, supra; Ames v. Miller, supra; Marling v. Jones, supra; and Woodward v. Mc-Cullom, 16 N. D. 42,48.

The allegations in the complaint are not sufficiently definite to enable us to tell with certainty whether or not Allen received through the Hendricks bank and Peterson *legal* conveyances of the title of Clifford and the equitable estate of Josephine Howe-Hanlyn. This opinion obviously proceeds upon the theory that these are merged in Allen through legal conveyances. The plaintiff, of course, will be permitted to amend the complaint if advised in the light of this opinion that it has a cause of action against Allen.

For the foregoing reasons we are of the opinion that the trial court properly sustained the demurrer of the defendant Allen. The order appealed from is affirmed.

ROBINSON, C. J., and CHRISTIANSON, J., concur.

BRONSON, J. I concur in result.

GRACE, J., (dissenting). This is an appeal from an order sustaining a demurrer to the complaint. The only question involved is whether or not the court erred in making its order sustaining the demurrer.

The complaint is too lengthy to be set out here in full, and we think it unnecessary to do so. A statement of the material facts pleaded will as well present the issue.

The plaintiff is a banking corporation, organized and existing under and by virtue of the laws of the State of North Dakota. It became insolvent and Fred E. Harris was appointed its receiver. The Farmers National Bank of Hendricks, Minn., is a corporation existing under and by virtue of the laws of the United States, with its principal place of business at Hendricks, Minn.

On or about the 5th or 6th day of Oct. 1916, one Thomas J. Clifford, one of the defendants herein, of St. John, was the owner of certain real estate described in the complaint, situate in the county of Rolette, State of North Dakota.

On or about the date last mentioned, Clifford, for value, did make and enter into a contract with one Josephine Howe, now Josephine Hanlyn, by the terms of which he sold to her the above mentioned land, she to receive a good and sufficient warranty deed thereto, upon fulfillment of the terms of the contract.

The consideration for the purchase of the land was $13,055, which was to be paid as follows: $300, on the delivery of the contract; $1200, on March 1st 1917; and the sum of $11,555, according to the terms of eleven promissory notes of even date, with the contract, for the sum of $1,000. each; the first of said notes became due Nov. 1st, 1917, and one of said notes becoming due each of the following years, up to and including 1927; and one note for $555, due Nov. 1st, 1928. All of the notes were payable to Thomas J. Clifford, and bore interest at the rate of eight per cent per annum, from March 1st, 1917.

Thirty-five and seventy-three hundredths acres of the tract of land lying East of the railway rightaway was conveyed by Thomas J. Clifford to one Amendee Desroches, and that tract was released from the contract. The contract was filed for record and recorded in the office of Register of Deeds in and for Rolette county, on the 8th day of August, 1918.

Josephine Howe, now Hanlyn, entered upon the performance of the

contract, and paid the said sum of $300 at the inception of the contract, and $1300, which became due March 1st, 1917, and the $1,000 note due Nov. 1st, 1917.

Subsequent to the making of the contract and delivery of the promissory notes, the defendant Clifford, it is alleged, for value, received, transferred, endorsed and delivered to the plaintiff the certain $1,000 promissory note which became due Nov. 1st, 1919.

On or about Dec. 26, 1918, Clifford sold and conveyed all of the premises (excepting the thirty-five and seventy three hundredths acres which was theretofore conveyed to Amendee Desroches, by warranty deed) to the defendant, Farmers National Bank of Hendricks, Minn. It assumed and agreed to pay the mortgage indebtedness, remaining unpaid on said land, and agreed to carry out the contract made by Clifford with Josephine Howe.

Thereafter, the Farmers National Bank of Hendricks, Minn., through its cashier, G. L. Peterson, procured Josephine Hanlyn, formerly Josephine Howe, to quit-claim all her interest in and to said land to said Peterson, its cashier, who then assumed and agreed to pay as part of the consideration therefor, the balance of the purchase price on the land then owing by Josephine Hanlyn, including the plaintiff's note and the whole of the amount remaining due on the contract. The quit-claim deed was taken in the name of G. L. Peterson, but, in fact, for the Farmers National Bank of Hendricks, Minn.

On or about the 6th day of Nov. 1919, by warranty deed, the Farmers National Bank of Hendricks, sold and conveyed, for a consideration of $18,000, all of said land, with the exception of the thirty five and seventy three hundredths acres, to Wm. H. Allen.

Plaintiff prays judgment against the defendants, Josephine Howe, Thomas J. Clifford, and the Farmers National Bank of Hendricks, Minn., for the sum of $1,000 and interest from March 1st, 1917, at eight per cent per annum, plus the sum of $2.79 costs incurred on the protest of the note; and that the conveyance of said property by Clifford to the Farmers National Bank of Hendricks, and by that bank to the defendant Allen, be adjudged null and void and of no force nor effect, so far as the plaintiff is concerned; that the plaintiff be adjudged to be the equitable owner of the land, by virtue of its ownership of the $1,000 note; that the plaintiff be adjudged to have a lien on the land for the payment of the $1,000, and protest fees and interest, costs and disbursements, and that

such lien be declared prior and superior to the rights of the defendants; that plaintiff be allowed to foreclose the said lien; that, under said foreclosure, that it be decreed that the land be sold in the manner now provided for sales of land under mortgage foreclosure; and the proceeds of the sale applied to the payment of the costs and expenses incident thereto, and then to the note with interest and protest fees; and, in the event that the land does not sell for sufficient to cover the above, that a deficiency judgment be entered against Josephine Howe, Thomas J. Clifford and Farmers National Bank of Hendricks, and that the purchaser, at the sale, receive the usual certificate of sale, and, in case of no redemption, the usual sheriff's deed.

The defendant Allen interposed a demurrer to the complaint, on four different grounds, among which was one, to-wit: that the complaint does not state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant. It was on this ground that the court sustained the demurrer, and whether the court erred in making its order sustaining the demurrer, we are to determine.

It is elementary that the demurrer admits all of the allegations of the complaint, or of the pleading to which it is interposed, that are well pleaded. The question is—assuming all the facts pleaded by plaintiff to be true—are they of such nature, character or effect as to state a cause of action; and, if substantiated by proper evidence, do they warrant recovery of any relief?

In order to determine the questions presented on this appeal, we must determine whether or not the contract of purchase is in the nature of security for the payment of plaintiff's note; and whether or not plaintiff is entitled to resort to that security, by bringing an action, which, in form and substance and by the relief demanded, is the same as that to foreclose a mortgage by action. We are required to determine several other controverted questions of law presented in the case. That determination cannot be accomplished until the relative interests of the parties to the contract, in the land, are defined.

This, we find our initiatory task. It lies at the threshold of our examination of this case. What, then, is the relative interest of each of the parties to the contract, in the land? Their relationship to it, and to each other? We are of the opinion, that it may with certainty be stated, as a general principle of law, applicable to this character of contracts, and one heretofore enunciated by this court, that, where the owner of land sells

it to another on contract of purchase, in which is specified the time and manner of future payments to be made by the vendee or the grantee; and which he does undertake to make; and where the grantor agrees, that, on such payments having been made, he will convey to the grantee by deed, that the grantee, at the time of the execution and delivery of the contract, becomes the equitable and beneficial owner, and the grantor merely holds the legal title of the land in trust for the grantee, and has thereby, in addition to the contract, security for the performance of the covenants in the contract, on the part of the grantee.

The position occupied by the vendor and vendee is to some extent that of mortgagee and mortgagor. The vendor, by his contract, has a lien for his purchase money, which the vendee may not affect or impair by conveyance, and which he can extinguish only by payment of the purchase price of the land, as specified in the contract.

This contract lien is a separate and aditional lien to the vendor's lien created by § 6861, Comp. Laws. It is a lien created by the contract between the parties. It may be assigned, and the assignee having received deed from the vendor, may enforce the contract of purchase against the original vendee.

The personal obligation referred to in § 6861, as we view the matter, is one where there is no additional or collateral security taken to secure the payment of it. If such additional or collateral security is taken, the right to a vendor's lien is waived, but so long as the vendor has only the personal obligation of the vendee, he may, instead of proceeding to enforce the personal obligation, disregard it and bring an action to recover the purchase price, and establish a lien therefor on the property sold; and this, by authority of § 6861.

If the vendor takes a written contract for the payment of all or part of the purchase price, and subsequently assigns it, he thereby waives his right to a statutory lien, except he may assign it in trust to pay debts and for the return of the surplus, as is provided in § 6862.

The assignee in such case would hold only the vendor's contract lien, which he could enforce the same as the vendor, but, after the assignment, neither the vendor nor his assignee would have any statutory vendor's lien, as that is personal to the vendor.

It is clear, from what has been said, that the vendor who sells land on contract, whereby the purchase price is to be paid according to the

terms of the contract, has a lien created by a statute, and, as well, a lien created by the contract of the parties.

In Roby v. Bank, 4 N. D. 160, Justice Barthlomew, speaking for the court said:

"The vendor has a lien for his purchase money by virtue of his contract, and a lien which the vendee cannot, by conveyance or otherwise, affect or impair, and which can be extinguished only by payment of the purchase money. * * * Such a vendor is not required to rely upon the technical vendor's lien, which is a creature of equity, and exists where the vendor has parted with the legal title, and may be destroyed at any time by a conveyance by the vendee. He has a more substantial and indestructible lien, created by contract, and of which all the world must take notice."

We think this language applies as well to the statutory lien as to a lien in equity. We think the principles above stated are further recognized and adopted in the cases of Nearing v. Coop, 6 N. D. 349, and Woodward v. McCollum and State Bank, 16 N. D. 49, and the authorities cited in those and the foregoing cases.

We think the vendee, in this character of contract, acquires an estate and interest in the land. In other words, becomes the equitable and beneficial owner, and is entitled to receive a conveyance of the title, as soon as he has performed his covenants contained in the contracts. Under such a contract, the vendor is the trustee of the title and has no authority to deliver the same to any other person than the vendee, except subject to vendee's rights under the contract. In other words, if, after making such contract, the vendor gives a deed to a third person, it must be subject to the vendee's rights, and that third person must be obligated, and is obligated, to do all that the vendor was obliged to do by the contract.

The vendor is bound by the contract for deed, just as much as the vendee. For he contracted to deliver the deed on performance of the covenants agreed to be performed by the vendee. He also contracts to deliver the title by a good and sufficient deed. He is, therfore, from the time of making such a contract, a trustee of the title for the vendee. He is not at liberty to make a similar contract, selling the same property to a third person, except in subordination to the prior contract. In other words, he cannot lawfully deed the land to such third person, except subject to the prior contract, for that would be a violation of his trust relation to the vendee in the first contract.

We are not here considering the question of such third person as an innocent purchaser. We deem it not necessary to discuss that subject in this opinion. We are considering only the right and authority of the vendor to convey the title to a third party, after having prior thereto, contracted in writing to deliver the same title to a prior purchaser.

In Miller v. Shelburn, 15 N. D. 182, the court said:

"The vendor remains to all intents, the owner of the land; he can convey it to a third person free from any legal claim or incumbrance; in short, the vendee obtains at law no real property nor interest in real property. The relations between the two contracting parties are wholly personal."

This language is part of the quotation from Pomeroy on Equity Jurisprudence. We do not agree with the language of the opinion in this regard. We do not see how it is possible that the vendor can at once be the trustee of the title for the vendee under a written contract for deed, and at the same time be lawfully authorized and have a right to sell and dispose of the same property to any third person, and this in total disregard of his obligations and duties under the former contract.

As bearing on the question of the vendee's interest in the land under a contract of this character, we may consider whether it is subject to levy under an execution.

Section 7720 C. L. describes what property is liable to execution. It is as follows:

"All goods, chattels, moneys and other property, both real and personal, or any interest therein of the judgment debtor not exempt by law and all property and rights of property seized and held under attachment in the action are liable to execution. Shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, and any interest in real or personal property and all other property not capable of manual delivery, shall be liable to be taken on execution and sold as hereinafter provided. The levy of an execution shall be made in the same manner as a levy under a warrant of attachment."

Under the terms of this statute, we are of the opinion, that the interest of the vendee in land purchased on contract is subject to execution and sale. It was so held by the Supreme Court of South Dakota, in the case of Brooke v. Eastman, 96 N. W. 699, in construing a statute similar to ours. We quote from the syllabus:

"Constitution, Article 8, §§ 5 and 6, relating to the disposal of school lands, provide that the purchaser shall pay one-fourth of the price in cash and the remaining three-fourths in installments, but all such sub-divided lands may be sold for cash, provided that upon the payment of the interest for one full year in advance the balance of the purchase price may be paid at any time, and that no "sale" shall operate to convey any title to any lands for 60 days after the date thereof, and that no grant shall issue until final payment. Laws 1890, p. 296, chap. 136, provides for sales in pursuance of the constitutional provisions, and for the issuance of "contracts of sale," and declares that whenever the purchaser of any tract shall default in the principal or interest, or shall violate any of the provisions of the contract of sale, such sale may be set aside. Held, that a purchaser who had made the first payment, and received a contract of sale from the commissioners, had an interest in the lands, which was subject to execution under Rev. Code Civ. Proc. 1903, § 336, subjecting to execution "all goods, chattels, moneys and other property, both real or personal, or any interest therein, of the judgment debtor."

We think, under our statute, which is practically the same as that of South Dakota, that an execution could be levied on the interest of the vendee in land purchased under a contract for deed. This could not be done unless the vendee has an interest or estate in the land, and we think it clear that he has such interest; and we think the rule in this regard, announced in the Miller v. Shelburn Case, is not correct. If it be true, that the relations between the vendee and vendor in a contract of purchase are wholly personal, then, though the vendee wholly performs, according to the terms of the contract, the vendor may refuse to convey to him by deed; or, if the vendor may deed it to a third party, or, if he is under no obligations to carry out his contract with the vendee, if the relations are personal only, the vendee's only remedy in all such cases would be an action for damages. But we know this is not true, for, when the vendee has performed according to the terms of the contract, he can compel the vendor to deliver title by an action of specific performance against him; and this, he may do, and may have relief by specific performance, even though the vendor has transferred the land by deed to some third person, unless the third person is an innocent purchaser.

It would seem, that such action could be maintained only on the theory that the vendee is the equitable and beneficial owner, and that the

grantor merely holds the legal title of the land in trust for the grantee, and as security for the performance of the vendee's covenants in the contract.

The relation between the vendor and vendee, under a written contract of purchase, is contractual, each being bound by the terms and covenants of the contract entered into between them.

We do not think a judgment becomes effectual as a lien against the equity of the vendee in land until an execution is issued thereon, and a levy made. Then, there is a lien perfected against such equitable interest, and when a lien is so effected, it is largely analogous to a lien on an equitable interest effected by contract. In other words, the vendor has security on the equitable interest of the vendee, which lien is secured by the terms of the contract, and that is all that is effected by levy under an execution.

Having arrived at the determination that the vendee of such a contract has an interest in the land, we proceed to the determination of plaintiff's rights by having purchased the note upon which suit is brought.

The contract having been given as security, and to that extent of the nature of a mortgage, was one which, under §§ 5546, 5594 and 5595, C. L. was entitled to record. It was duly recorded, as alleged in the complaint. It was thereafter constructive notice to all the world of its contents. It recited the consideration for the purchase, and describes the notes given to represent the purchase price. The contract was security for the payment of those notes. It was in effect a mortgage, securing their payment.

If the defendant Allen had procured an abstract, it must have shown this contract. It is true, it would also have shown, that Josephine Hanlyn had quitclaimed her interest in the premises to the Farmers National Bank of Hendricks, Minnesota, but that would not operate to satisfy the vendor's lien on the land under the contract.

The vendor, Clifford, deeded the land to the Farmers National Bank, who assumed and agreed to pay the mortgage indebtedness remaining unpaid on the land, and assumed and agreed to carry out the contract made to Josephine Hanlyn by Clifford.

Subsequently, the Farmers National Bank procured from Josephine Hanlyn her quitclaim deed of all her interest in the land, and then and there agreed, as part of the consideration, to pay the balance of the purchase

price of the land, then owing by Josephine Hanlyn, including the note sued upon.

To say that the quitclaim deed from Josephine Hanlyn was sufficient to set aside a lien under the contract, would be in effect to say, that the mortgagor is a proper party to satisfy the mortgage instead of the mortgagee, considering that the contract, in the circumstances of this case, is in effect a mortgage.

The Farmers National Bank, after it received the deed to the land, was in the same position as Clifford as to Josephine Hanlyn. It had notice, knew of, and assumed to pay the balance owing by Josephine Hanlyn on the contract, and this, as a part of the consideration of receiving the deed from Clifford. She agreed to pay this thousand dollar note in question, and the security for the payment of the same was the contract which in effect was a mortgage.

But, even if it had not assumed or agreed to pay this note, and had not taken quitclaim deed from Josephine Hanlyn, the contract being of record, it had constructive notice of the existence of the note. It knew it was secured by this contract. It was its duty to see that the money applied to the payment of the purchase price was applied to the discharge of this note. For it was secured by the contract.

We do not see how Allen can be in any better position than the bank. He had the same constructive notice, by the recording of the contract, that the bank had.

If the notes had been secured by a mortgage, instead of by the contract, and, as in this case, Clifford had sold, in the ordinary course of business, a note similar to the one in question, we think in equity this would operate as an assignment of the mortgage to the extent of at least an amount thereof, equal to the note.

So, we are of the opinion, that the lien acquired by the purchase contract is in principle similar to a mortgage, and, in equity follows the debt on its assignment as an incident thereof, and the assignment of a part of the purchase money notes will operate at least as an assignment of the lien pro tanto. See, 27 R.C.L., §§ 349, 350 and 351, and Notes 19 and 20, and cases there cited.

All of the parties interested in the contract should be parties to this ˑn, in order that their respective rights and interests therein may be determined. In addition to the demurrer interposed by defendant Allen, several of the defendants interposed demurrers, but no appeal was taken

from the order of the court, with reference to any demurrer except that of Allen; and, hence, that is the only one presented here for consideration.

From what has been above said, we are of the opinion, that the trial court was in error in sustaining the demurrer interposed by Allen, and in making its order to that effect. That demurrer should have been overruled, and defendant Allen permitted to answer, and the case thereafter tried on its merits.

We have written quite at length, with reference to the questions involved in this opinion. The case came to the writer in the regular order of assignment, and the foregoing opinion was prepared with the expectation that it would be adopted as the law of the case. Thorough investigation was made into several crucial questions, which heretofore have not been decided by this court, and definite conclusions, with reference thereto, arrived at, which, we believe, constitute the law of the case.